**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
CEDAR RAPIDS DIVISION**

UNITED STATES OF AMERICA,

               Plaintiff,

vs.

DANIEL P. MITCHELL,

               Defendant.

No. CR 05-50-LRR

**ORDER**

_____

*TABLE OF CONTENTS*

I.    **INTRODUCTION** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **2**

II.   **PROCEDURAL BACKGROUND** . . . . . . . . . . . . . . . . . . . . . . . . . . . **2**

III.  **TRIAL EVIDENCE** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **5**

       A.    *Ownership of WFI Bamboo* . . . . . . . . . . . . . . . . . . . . . . . . . . . **6**

       B.    *Income/Debt Payments* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **8**

IV.  **PRINCIPLES OF REVIEW** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **11**

       A.    *Motion for Judgment of Acquittal* . . . . . . . . . . . . . . . . . . . . . . **11**

       B.    *Motion for New Trial* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **11**

V.    **THE MERITS** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **12**

       A.    *Count 1: Concealment (18 U.S.C. § 152(1))* . . . . . . . . . . . . . . . **12**

             1.    *Sufficiency of the Evidence* . . . . . . . . . . . . . . . . . . . . . . **13**

          *a.*      ***Rule 29*** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **13**

          *b.*      ***Rule 33*** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **15**

     *2.*     ***Advice of Counsel*** . . . . . . . . . . . . . . . . . . . . . . . . . **15**

   *B.*   ***Count 2: False Declaration (18 U.S.C. § 152(3))*** . . . . . . . . . . . . . . **17**

     *1.*     **United States v. Wells** . . . . . . . . . . . . . . . . . . . . . . . . . . **18**

     *2.*     ***Analysis*** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **20**

          *a.*      ***Statutory Text*** . . . . . . . . . . . . . . . . . . . . . . . . . . . **20**

          *b.*      ***Common Law Terms*** . . . . . . . . . . . . . . . . . . . . . . . **20**

          *c.*      ***Legislative History*** . . . . . . . . . . . . . . . . . . . . . . . . **22**

     *3.*     ***Intent to Defraud*** . . . . . . . . . . . . . . . . . . . . . . . . . . . **26**

     *4.*     ***Disposition*** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **26**

*VI.*   ***CONCLUSION*** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **28**

## I. INTRODUCTION

Before the court is Defendant Daniel P. Mitchell's Motion for Judgment of Acquittal or For New Trial ("Motion") (docket no. 49).

## II. PROCEDURAL BACKGROUND

On May 19, 2005, a grand jury charged Defendant in a two-count Indictment. Both counts concerned Defendant's conduct in a voluntary Chapter 7 bankruptcy proceeding he filed in 2000.

Count 1 charged Defendant with fraudulent concealment of assets in connection with

a bankruptcy proceeding in violation of 18 U.S.C. § 152(1). Count 1 alleged that Defendant knowingly and fraudulently concealed from creditors and trustees (1) his ownership interest in Wood Floors Import Distributor, L.C., d/b/a WFI Bamboo ("WFI Bamboo") and (2) his total income from January 1, 1999, through about July 11, 2000.

Count 2 charged Defendant with making a material false declaration, certificate, verification, and statement, under penalty of perjury as permitted under 28 U.S.C. §1746, in and in relation to his voluntary bankruptcy petition, in violation of 18 U.S.C. § 152(3). Count 2 alleged that Defendant submitted his bankruptcy petition under penalty of perjury and knowingly and fraudulently failed to disclose (1) his ownership interest in WFI Bamboo, (2) his total income from January 1, 1999, through about July 11, 2000, and (3) debt payments WFI Bamboo made on Defendant's behalf.

During this prosecution, and up until the close of the government's case-in-chief, the government and Defendant proceeded as if materiality were an element of Count 2. With respect to Count 2, the Eighth Circuit Court of Appeals has held that 18 U.S.C. § 152(3) requires the government to prove Defendant's false statements concerned a material matter, i.e., a matter that has a natural tendency to influence, or is capable of influencing, the outcome of the bankruptcy proceeding. *See United States v. Yagow*, 953 F.2d 427, 432 n.2 ("Although 18 U.S.C. § 152 does not expressly require that the false verification be made with regard to a material matter, the courts have imposed such a requirement." (citing *United States v. O'Donnell*, 539 F.2d 1233, 1237 (9th Cir. 1976)); *see also Kungys v. United States*, 485 U.S. 759, 770 (1988) (defining materiality). In the Indictment, the government accused Defendant of making false statements "that were material to his voluntary bankruptcy petition." The government proposed jury instructions to the court before trial that required that the false declaration concern a material matter. In its opening statement to the jury, the government indicated it would prove the Defendant's

false statements were material. Both parties questioned the government's witnesses about the materiality of Defendant's alleged false statements.

The Eighth Circuit Model Criminal Jury Instructions, however, indicate that it is presently an open question whether materiality is an element of 18 U.S.C. § 152(3). *See* Manual of Model Criminal Jury Instructions for the District Courts of the Eighth Circuit, 6.18.152B, at 139 n.1 (2005) ["Model Instructions"] ("There is some question as to whether materiality is an element of the offense of bankruptcy fraud."). The openness of the question stems from the fact that the Supreme Court decided *United States v. Wells*, 519 U.S. 482 (1997), after the Eighth Circuit Court of Appeals decided *Yagow*. *Id*. *Wells* has brought the validity of *Yagow* into question. *Id*.; *see also United States v. Watts*, No. 96-4787, 1998 WL 398740, *2-*3 (4th Cir. July 8, 1998) (recognizing potential impact of *Wells* on *Yagow* but not reaching question of whether 18 U.S.C. § 152(3) still requires materiality) (unpublished); 1 *Collier on Bankruptcy* ¶ 7.02, at 1-7 (15th rev. ed. 2004) ["Collier"] ("Courts have not yet addressed the unique issues that are raised by section 152(3). . . . [T]he materiality requirement remains uncertain.").

After the close of the government's evidence, Defendant moved for a judgment of acquittal. Defendant argued that there was insufficient evidence to prove he committed the crimes charged in the Indictment. In part, Defendant argued the government had not presented evidence of materiality to support Count 2 of the Indictment.

The court ruled materiality is not an element of 18 U.S.C. § 152(3) and denied Defendant's motion for judgment of acquittal. The court predicted that the Eighth Circuit Court of Appeals would overrule *Yagow* and hold that materiality is not an element of 18 U.S.C. § 152(3). The court decided, however, to submit a special interrogatory to the jury regarding the materiality of Defendant's statements.

From August 29 to August 31, 2005, the court held a jury trial. The jury found

Defendant guilty of both counts of the Indictment. On Count 1, the jury found Defendant fraudulently concealed his income, but did not fraudulently conceal an ownership interest in WFI Bamboo. On Count 2, the jury found Defendant knowingly and fraudulently made false statements in his bankruptcy petition about his income and debt payments, but did not fail to disclose an ownership interest in WFI Bamboo.

In response to the special interrogatory on Count 2, the jury stated it did not unanimously find that Defendant's statements were material. On the verdict form for Count 2, the court asked the jury: "Do you unanimously find beyond a reasonable doubt that one or more of the false declarations, certificate[s], verification[s] and statement[s] under penalty of perjury were 'material' matters, that is, had a natural tendency to influence, or were capable of influencing, the outcome of the bankruptcy proceeding?" The jury answered "No."

On September 7, 2005, Defendant filed the instant Motion. On September 20, 2005, the government filed a Resistance. The court held a hearing on the Motion on December 5, 2005. Defendant was personally present with his attorney Stanley Roush. Assistant United States Attorney Ian Thornhill represented the government.

### III. TRIAL EVIDENCE

Defendant filed a voluntary petition for Chapter 7 bankruptcy on July 12, 2000. In the Statement of Financial Affairs portion of his petition, Defendant declared, under penalty of perjury,[1] that (1) he did not hold any interest or offices in any businesses,[2] (2)

---

[1] "I declare under penalty of perjury that I have read the foregoing answers contained in the Statement of Financial Affairs and any attachments thereto and that they are true and correct."

[2] Question 16 required Defendant to:

no payments exceeding $600 were made toward any of his debts within the 90 days preceding the filing of his bankruptcy petition,[3] and (3) he had no income from employment in 1999 or 2000.[4] In Schedule I of his petition, however, Defendant stated he was receiving $1000 gross pay per month from WFI Bamboo, with an estimated net monthly take home pay of $800 per month. Defendant verified the accuracy of his petition under oath at a "341 Meeting of Creditors" on August 7, 2000.

## A. *Ownership of WFI Bamboo*

At trial, the government presented evidence that, contrary to his bankruptcy petition, Defendant owned WFI Bamboo in 2000. Although Defendant produced WFI Bamboo meeting minutes that indicated Defendant transferred all of his interest in the business to his wife in 1998, the government contended the purported 1998 transaction was

---

> [L]ist the names and addresses of all businesses in which the debtor was an officer, director, partner, or managing executive of a corporation . . . within the two years immediately preceding the commencement of this case, or in which the debtor owned 5 percent or more of the voting or equity securities within the two years immediately preceding the commencement of this case.

Defendant answered "None."

[3] Question 3 required Defendant to "[l]ist all payments on loans . . . aggregating more than $600 to any creditor, made within 90 days immediately preceding the commencement of this case." Defendant answered "None."

[4] Question 1 required Defendant to "[s]tate the gross amount of income the debtor has received from employment, trade, or profession, or from operation of the debtor's business from the beginning of this calendar year to the date this case was commenced. State also the gross amounts received during the two years immediately preceding this calendar year." Defendant listed $0 for 1999 and 2000; he listed $60,000 for 1998.

a sham that Defendant concocted after the fact to shield his assets from creditors and trustees. The government maintained the transfer did not take place until 2000, and, therefore, Defendant should have disclosed his ownership of WFI Bamboo in his bankruptcy petition.

WFI Bamboo's corporate attorney, Nicolas Abou-Assaly, testified Defendant and his wife did not send Abou-Assaly the meeting minutes until March 2000. Abou-Assaly also testified that Defendant had called him twice in 1999 to tell him that Defendant wanted Defendant's wife to have all of his interest in WFI Bamboo, but on neither occasion mentioned the minutes documenting the alleged 1998 transfer.

The jury also heard a recording of Defendant testifying under oath in another bankruptcy hearing ("Hearing") in March 2003. WFI Bamboo had filed for bankruptcy; Defendant was attempting to gain control of WFI Bamboo's inventory. At the Hearing, Defendant stated:

> I feel as an owner, I've never lost that position. Just because a piece of paper takes it away from me does not change the fact that I started this, I ran it, I put 65 hours a week in this company.

A bankruptcy trustee testified Defendant admitted to her in January 2003 that he founded the company in 1998 and transferred WFI Bamboo to his wife in 2000. The trustee also testified Defendant said he was the president of WFI Bamboo until he was fired in October 2002. Defendant admitted at the Hearing that, although though he wrote "laborer" on his schedule, he was president and CEO of WFI Bamboo when he signed his petition in July 2000.

Defendant maintained that he divested himself of WFI Bamboo in 1998. For example, Defendant's wife's 1998 tax return showed she owned 75% of WFI Bamboo, the ownership share the government attributed to Defendant. WFI Bamboo's 2000 tax return

indicated that no change in ownership took place during 2000. The tax returns upon which Defendant relied, however, were not prepared until 2000 and 2002, respectively. Also, WFI Bamboo's 1998 tax return did not indicate a change in ownership.

On cross-examination, defense witness Tom Towne testified that Defendant was "president" of WFI Bamboo in late 2002. Towne also testified Defendant did not cancel insurance for WFI Bamboo, which was taken out under Defendant's social security number, until 2002.

## B. *Income/Debt Payments*

The government also presented evidence to show WFI Bamboo (1) made payments between February and July 2000 on a personal loan Defendant incurred with his ex-father-in-law at F&M Bank and (2) made payments in 1999 and 2000 on a truck Defendant owned. The government contended these debt payments constituted income that Defendant was illegally attempting to shield from his creditors. Defendant was not, as alleged in his petition, a "laborer" at WFI Bamboo making $1000 per month; instead, Defendant was the owner of WFI Bamboo, hiding his true salary through the debt payments scheme.

The record contains evidence that WFI Bamboo made payments on a personal loan Defendant had with F&M Bank (account # 200099152). The government presented evidence of the following debt payments on the F&M loan:

> February 28, 2000: Check # 2063, signed by Defendant, from WFI Bamboo to F&M Bank for $963.91; entire amount applied to loan account # 200099152.

> March 23, 2000: Check # 068680 from South Slope Cooperative Communication Company to WFI Bamboo for $116.92, signed over to F&M Bank; entire amount applied to loan account # 200099152.

> March 27, 2000: Check # 2097, signed by Defendant, from

8

WFI Bamboo to F&M Bank for $6700; $2000 applied to loan
account # 200099152.

May 2, 2000: Check # 2151, signed by Defendant, from WFI
Bamboo to F&M Bank for $6500; $1900 applied to loan
account # 200099152.

May 25, 2000: Check # 2203 from WFI Bamboo to F&M
Bank for $6700; $2000 applied to loan account # 200099152.

July 6, 2000: Check # 2268, signed by Defendant, from WFI
Bamboo to F&M Bank for $6700; $2000 applied to loan
account # 200099152.

July 27, 2000: Check # 2328, signed by Defendant, from WFI
Bamboo to F&M Bank for $5000; $2000 applied to loan
account # 200099152.[5]

At the Hearing, Defendant testified under oath that the debt payments were income.
When asked by the trustee if the debt payments were "like income to you?," Defendant
replied: "Of course." Defendant personally signed at least five of the seven debt-payment
checks on behalf of WFI Bamboo. Defendant presented a handwritten note to the trustee
in advance of the Hearing. The noted stated: "Being the . . . starter of the Co. . . .
[$]425.00 take home every two weeks[?] Ha! Ha!" Also, a sticky note was attached to a
payment schedule on the F&M Bank loan. The payment schedule listed payments from
March 27, 2000, to October 7, 2002. Defendant wrote on the sticky note: "Payments on
loan line of credit. Since 3-27-2000. This was income to Dan. Not a loan from [WFI
Bamboo] to pay a loan." At the Hearing, Defendant testified he was receiving

---

[5] The July 27, 2000 debt payment was made after Defendant filed his petition. The
government introduced the July 27, 2000 debt payment to show a pattern of activity and
did not contend that Defendant was required to disclose it on his bankruptcy petition.

approximately $2000 each month in debt payments in 2000.

The record also contains evidence that WFI Bamboo made payments on a 1997 Ford F-150 truck Defendant owned. The government presented evidence of the following debt payments on the truck:

> September 24, 1999: Check # 1752, signed by Defendant, from WFI Bamboo to Ford Credit for $700.
>
> November 1, 1999: Check # 1834, not signed by Defendant, from WFI Bamboo to Ford Credit for $1500.
>
> January 14, 2000: Check # 1962, signed by Defendant, from WFI Bamboo to Ford Credit for $1500.
>
> February 24, 2000: Check # 2044, signed by Defendant, from WFI Bamboo to Ford Credit for $1500.
>
> July 31, 2000: Check # 2337, signed by Defendant, from WFI Bamboo to Ford Credit for $1500.[6]

Defendant also handed the trustee a copy of WFI Bamboo's Schedule of Personal Property ("Schedule"). The Schedule listed a 1997 Ford F-150 truck. Defendant claimed he owned the truck, not WFI Bamboo. Defendant wrote: "Dan's personal. Transferred to [my son on] Oct[ober] 18[, 2002.]" Defendant also gave the trustee a copy of the truck's title. The truck was titled to Defendant until October 17, 2002, when he transferred it to his son. Attached to the Schedule and the title was another sticky note. Defendant wrote on the note: "Proof of ownership of truck. Dan bought truck in Summer of 97 and has always been in his name till now. Gave to my son. 10-17-02."

---

[6] The July 31, 2000 debt payment was made after Defendant filed his petition. The government introduced the July 27, 2000 debt payment to show a pattern of activity and did not contend that Defendant was required to disclose it on his bankruptcy petition.

## IV. PRINCIPLES OF REVIEW

Defendant moves for a judgment of acquittal pursuant to Federal Rule of Criminal Procedure 29 and, in the alternative, for a new trial pursuant to Federal Rule of Criminal Procedure 33.

### A.  Motion for Judgment of Acquittal

Rule 29 provides that "the court on the defendant's motion must enter a judgment of acquittal of any offense for which the evidence is insufficient to sustain a conviction." Fed. R. Crim. P. 29(a).  Such a motion is permitted after trial, in which case the court may set aside the verdict and enter a judgment of acquittal.  Fed. R. Crim. P. 29(c).  It is well settled, however, that "[j]ury verdicts are not lightly overturned." *United States v. Stroh*, 176 F.3d 439, 440 (8th Cir. 1999).  The court must view the evidence in the light most favorable to the government and give the government the benefit of all reasonable inferences.  *United States v. Surratt*, 172 F.3d 559, 563 (8th Cir. 1999).  The court must uphold the jury's verdict so long as "a reasonable-minded jury could have found [Defendant] guilty beyond a reasonable doubt." *United States v. Hayes*, 391 F.3d 958, 961 (8th Cir. 2004).  It is not the province of the court to weigh the evidence or evaluate the credibility of witnesses.  *Id*.  Those tasks are for the jury.  *Id*.

### B.  Motion for New Trial

Rule 33 provides that "[u]pon the defendant's motion, the court may vacate any judgment and grant a new trial if justice so requires." Fed. R. Crim. P. 33(a).  A district court is granted broad discretion in considering a motion for a new trial.  *See United States v. Wilkins*, 139 F.3d 603, 604 (8th Cir. 1998).   A district court may "weigh the evidence, disbelieve witnesses, and grant a new trial even where there is substantial evidence to sustain the verdict." *United States v. Campos*, 306 F.3d 577, 579 (8th Cir. 2002) (citation omitted).  However, "[u]nless the district court ultimately determines that

a miscarriage of justice will occur, the jury's verdict must be allowed to stand." *Id.* (citing *United States v. Lacey*, 219 F.3d 779, 783 (8th Cir. 2000)); *see also Ortega v. United States*, 270 F.3d 540, 547 (8th Cir. 2001) (noting a district court may grant a new trial under Rule 33 "only if the evidence weighs heavily enough against the verdict that a miscarriage of justice may have occurred").

A district court enjoys more latitude in granting new trials under Rule 33 than in granting motions for judgment of acquittal under Rule 29; however, "[m]otions for new trials based on the weight of the evidence are generally disfavored." *Campos*, 306 F.3d at 579. District courts "must exercise the Rule 33 authority 'sparingly and with caution.'" *Id.* (quoting *United States v. Lincoln*, 630 F.2d 1313, 1319 (8th Cir. 1980)).

## V.  THE MERITS

In the instant motion, Defendant raises a number of arguments. The court considers these arguments separately with respect to each count on which Defendant was convicted.

### A.  Count 1: Concealment (18 U.S.C. § 152(1))

The jury convicted Defendant of concealment of assets in Count 1—a violation of 18 U.S.C. § 152(1), which states:

> A person who . . . knowingly and fraudulently conceals from a custodian, trustee, marshal, or other officer of the court charged with the control or custody of property, or, in connection with a case under title 11, from creditors or the United States Trustee, any property belonging to the estate of a debtor . . . shall be fined under this title, imprisoned not more than 5 years, or both.

18 U.S.C. § 152(1). In support of his Motion, Defendant claims there was insufficient evidence presented at trial to sustain his conviction. He also claims the court erred in failing to instruct on the advice of counsel.

## 1. *Sufficiency of the Evidence*

Defendant contends that the government failed to prove the debt payments were Defendant's income and thus part of the bankruptcy estate. Defendant claims the evidence showed the payments were made by a third party, WFI Bamboo. Because he claims his wife owned WFI Bamboo, Defendant argues the United States Trustee would have had no authority to recover WFI Bamboo's payments. Defendant maintains he did not violate the law knowingly or fraudulently.

### a. *Rule 29*

Viewing the evidence in the light most favorable to the government and giving the government the benefit of all reasonable inferences, *see Surratt*, 172 F.3d at 563, the court concludes there is sufficient evidence in the record to sustain a conviction on Count 1. As the court instructed the jury, the commencement of a bankruptcy case creates a bankruptcy estate. 11 U.S.C. § 541(a)(1). The bankruptcy estate includes "all legal or equitable interests of the debtor in property as of the commencement of the case." *Id.* The estate also includes all "[p]roceeds, product, offspring, rents, or profits of or from property of the estate, except such as are earnings from services performed by an individual debtor after the commencement of the case." *Id.* § 541(a)(6). It is clear that the jury could have found that Defendant owned WFI Bamboo, a part of the bankruptcy estate, and then furtively covered up that ownership—devising a sham transaction with his wife to escape his creditors. The jury could have further found Defendant was president of WFI Bamboo, not its laborer. The jury could have found Defendant supplemented his official income of $1000 per month with periodic payments on his personal loans. The jury could have construed Defendant's statements at the Hearing as admissions that he knew these payments were income. Together, this conduct could be reasonably construed as evidence Defendant knowingly and fraudulently concealed his income in his bankruptcy proceeding.

The court recognizes that the foregoing analysis is inconsistent with the jury's verdict in one respect: namely, the fact the jury acquitted Defendant of fraudulently concealing his ownership interest in WFI Bamboo. From this, Defendant apparently concludes the jury found that he did not own WFI Bamboo. It is well established, however, that inconsistent verdicts in the same indictment as to the same defendant are unobjectionable. *United States v. Powell*, 469 U.S. 57, 62-63 (1984); *United States v. Morton*, 412 F.3d 901, 904 (8th Cir. 2005); *United States v. Fuller*, 374 F.3d 617, 623 (8th Cir. 2004), *cert. denied*, 125 S. Ct. 926 (2005). The court cannot and need not guess which aspect of the jury's verdict reflects its true conclusions. *Fuller*, 374 U.S. at 623 (citing *Dunn v. United States*, 284 U.S. 390, 393-94 (1932) (Holmes, J.)). The inconsistency may also be the result of confusion or lenity. *Id.* The court, therefore, shall not speculate on what the jury might have been thinking, but instead simply inquire into the sufficiency of the evidence on the aspects of the charge of which Defendant was convicted. *Id.* As indicated, the evidence is clearly sufficient.

Even if ownership of WFI Bamboo were uncertain, the Eighth Circuit Court of Appeals has stated that "a debtor's duty to disclose assets extends to all property that *may* be found to be property of the bankruptcy estate." *United States v. Novak*, 217 F.3d 566, 577 (8th Cir. 2000) (emphasis added). "It is a reasonable reading of 18 U.S.C. § 152 to conclude that the statute requires a debtor to disclose the existence of assets whose immediate status in bankruptcy is uncertain." *Id.* Even in the face of uncertainty, Defendant was required to disclose the debt payments made by WFI Bamboo, "so that their legal status could be determined by the bankruptcy court." *Id.*

In sum, the court finds "a reasonable-minded jury could have found [Defendant] guilty beyond a reasonable doubt." *Hayes,* 391 F.3d at 961. Therefore, Defendant's motion for judgment of acquittal lacks merit with respect to Count 1.

### b. Rule 33

The court also concludes a new trial is not warranted under Rule 33 on Count 1. As the foregoing discussion of Defendant's Rule 29 motion shows, the evidence supports the verdict. The court also concludes no miscarriage of justice occurred here. The court therefore declines to grant Defendant a new trial. *See Lacey*, 219 F.3d at 783 ("Unless the district court ultimately determines that a miscarriage of justice will occur, the jury's verdict must be allowed to stand.").

### 2. Advice of Counsel

At trial, Defendant requested a jury instruction regarding advice of counsel. Over the government's objection, the court instructed the jury as follows:

> One of the issues is whether defendant acted in good faith. Good faith is a complete defense to the charges of fraudulent concealment of assets and fraudulent submission of false declarations, certificate, verification and statement if it is inconsistent with intent to defraud which is an essential element of the charges. One who expresses an opinion honestly held by him, or a belief honestly entertained by him, is not chargeable with fraudulent intent even though his opinion is erroneous or his belief is mistaken; and, similarly, evidence which establishes only that a person made a mistake in judgment or an error in management, or was careless, does not establish fraudulent intent. Evidence that defendant acted in good faith may be considered by you, together with all the other evidence, in determining whether or not he acted with the intent to defraud.

Final Jury Instruction No. 19. This instruction was modeled on Model Instruction 9.08, but Defendant contended the instruction did not go far enough. Defendant asked the court to also instruct the jury on the advice of counsel in accordance with Model Instruction 9.08, Note on Use (2)(d). Note on Use (2)(d) states, in part, that:

> Defendant would not be acting with intent to defraud if, before taking any action with regard to the alleged offense, he consulted in good faith an attorney whom he considered competent, and for the purpose of securing advice on the lawfulness of his possible future conduct made a full and accurate report to that attorney of all material facts of which he had the means of knowledge, and then acted strictly in accordance with the advice given to him by that attorney.

Model Instruction 9.08, Note on Use (2)(d), at 469-70 (citing *United States v. Ploundniak*, 657 F.2d 948, 958-59 (8th Cir. 1981)). Defendant contends a new trial is warranted pursuant to Rule 33 because the court refused to give the jury this instruction. Defendant claims the attorney who represented him in his bankruptcy, Michael Mollman, provided him with advice about his petition, which he strictly followed. Defendant claims Mr. Mollman told him he had to show some income on his petition. Defendant claims that, but for Mollman's advice, he would not have listed $1000 per month in income from WFI Bamboo on Schedule I of his petition.

The court rejects Defendant's argument and concludes it correctly declined to give Defendant's proffered instruction on the advice of counsel. The government did not charge Defendant with disclosing income he did not earn; rather, the government accused Defendant of failing to report income Defendant earned in the form of debt payments in excess of $1000 per month. On cross-examination, Mr. Mollman testified he never advised Defendant that Defendant did not have to list income received in the form of debt payments. There is thus no evidence in the record to warrant Defendant's requested jury instruction. *Cf. United States v. Barney*, 674 F.2d 729, 731-32 (8th Cir. 1982) (concluding advice of counsel instruction not warranted where "no evidence [Defendant] attempted in good faith to seek competent legal advice from any attorney"). Accordingly, the advice of counsel instruction was correctly omitted from the final instructions and a

new trial is not warranted.  *See, e.g., United States v. Parker*, 267 F.3d 839, 843-44 (8th Cir. 2001) (declining to grant new trial).

## B.  Count 2: False Declaration (18 U.S.C. § 152(3))

In Count 2, Defendant was convicted of making a false declaration under penalty of perjury, in violation of 18 U.S.C. § 152(3), which states:

> A person who . . . knowingly and fraudulently makes a false declaration, certificate, verification, or statement under penalty of perjury as permitted under section 1746 of title 28, in or in relation to any case under title 11 . . . shall be fined under this title, imprisoned not more than 5 years, or both.

18 U.S.C. § 152(3).[7]  The thorny question in this case is whether materiality is an element of the statute.  That is, must the government prove Defendant's false statement had a natural tendency to influence, or was capable of influencing, the outcome of the

---

[7] Title 28, United States Coden Section 1746 states:

> Wherever, under any law of the United States or under any rule, regulation, order, or requirement made pursuant to law, any matter is required or permitted to be supported, evidenced, established, or proved by the sworn declaration, verification, certificate, statement, oath, or affidavit, in writing of the person making the same (other than a deposition, or an oath of office, or an oath required to be taken before a specified official other than a notary public), such matter may, with like force and effect, be supported, evidenced, established, or proved by the unsworn declaration, certificate, verification, or statement, in writing of such person which is subscribed by him, as true under penalty of perjury, and dated, in substantially the following form: . . . . "I declare under penalty of perjury that the foregoing is true and correct . . . ."

28 U.S.C. § 1746(2).

bankruptcy proceeding?

In the instant Motion, Defendant reasserts his argument that 18 U.S.C. § 152(3) requires materiality. Defendant maintains any false statement was not material because Defendant owed nearly $100,000 in back-taxes and penalties. Defendant claims that any failure to disclose the debt payments (which he characterizes as amounting to around $6000) as income was immaterial because the amount allegedly concealed was less than $100,000; because the federal and state taxing authorities had first priority in the bankruptcy estate assets, Defendant claims his creditors were not harmed and therefore the false statements could not have affected the outcome of the bankruptcy proceeding.

In the alternative, Defendant claims the court violated his due process rights when it effectively changed the crime charged in the Indictment in the middle of trial. *See, e.g., United States v. Johnston,* 353 F.3d 617, 623 (8th Cir. 2003) (holding constructive amendment of indictment is reversible error per se); *see also United States v. Griffin*, 215 F.3d 866, 868-69 (8th Cir. 2001) ("A jury instruction constructively amends an indictment if it modifies the essential elements of the offense charged in the indictment."). The Defendant also claims it is unfair that he should bear the burden of an appeal when current Eighth Circuit Court of Appeals precedent is in his favor. Defendant claims the government should bear the burden of appeal, because it is the party seeking to overturn precedent.

The court now concludes *Wells* is distinguishable, and, therefore, materiality remains an element of 18 U.S.C. § 152(3), pursuant to *Yagow*. Accordingly, the court shall grant Defendant's motion for new trial with respect to Count 2 of the Indictment.

### 1. United States v. Wells

In *Wells*, the Supreme Court considered whether materiality was an element of 18 U.S.C. § 1014, which states:

> Whoever knowingly makes any false statement . . . for the
> purpose of influencing in any way the action [of a federally
> insured bank] upon any application, advance, . . .
> commitment, or loan . . . shall be fined not more than
> $1,000,000 or imprisoned not more than 30 years, or both.

18 U.S.C. § 1014.  To determine whether the statute required materiality, the Court adopted a three-part test.

First, the Supreme Court examined the text of the statute.  *Wells*, 519 U.S. at 490. The Court noted that the statute does not, on its face, require materiality.  *Id*.  To the contrary, it criminalizes "any" false statement.  *Id*.

Second, the Supreme Court examined the common-law meaning of the terms in the statute.  The Court recognized it "presume[s] that Congress incorporates the common-law meaning of the terms it uses if those terms have accumulated settled meaning under the common law and the statute does not otherwise dictate."  *Id*. at 491 (citations and internal quotation marks omitted).  The Court noted that there was no showing that the term "false statement" had a settled meaning at common law, let alone one requiring materiality.  *Id*.

Third, the Supreme Court examined the legislative history of 18 U.S.C. § 1014. *Id*. at 492.  The legislative history confirmed the Court's conclusion that the statute did not require materiality.  *Id*.  The court determined Congress enacted 18 U.S.C. § 1014 as part of a general recodification of the criminal code.  *Id*.  The new criminal code included other provisions involving false representations that expressly required materiality.  *Id*. at 492-94. It also determined 18 U.S.C. § 1014 consolidated thirteen statutes concerning false representations.  *Id*. Ten of the thirteen statutes 18 U.S.C. § 1014 brought together did not contain a materiality requirement before recodification; three of the thirteen contained express materiality requirements before recodification.  *Id*. at 493.  "The most likely inference," the Court concluded, "is that Congress deliberately dropped the term

'materiality' without intending materiality to be an element of § 1014." *Id.* The Court also presumed Congress was aware of one of the Court's prior decisions, in which it held that a similarly worded statute did not require materiality. *Id.* at 495 (citing *Kay v. United States*, 303 U.S. 1, 5-6 (1938)).

### 2. Analysis

Applying the *Wells* analysis to the present case, the court concludes 18 U.S.C. § 152(3) requires materiality.

#### a. Statutory Text

The court begins its analysis with the text of the statute. *Wells*, 519 U.S. at 490. As in *Wells*, the text of 18 U.S.C. § 152(3) does not explicitly state materiality is required. To the contrary, the statute criminalizes "a" false declaration, certificate, verification, or statement under penalty of perjury. The use of the article "a" in 18 U.S.C. § 152(3) is nearly as broad as the use of the word "any" in 18 U.S.C. § 1014. In both instances, Congress did not specify that the false statement needs to be material. By contrast, another section of the same statute expressly requires materiality. *See* 18 U.S.C. § 152(5) (prohibiting "knowingly and fraudulently receiv[ing] any material amount of property from a debtor after the filing of a case under title 11, with intent to defeat the provisions of title 11").

#### b. Common Law Terms

The court next turns to the examine the common-law meaning of the terms in 18 U.S.C. § 152(3). Unlike the statute at issue in *Wells*, there are two terms in 18 U.S.C. § 152(3)—"fraudulently" and "under penalty of perjury"— that, taken together, indicate materiality is required.

First, 18 U.S.C. § 152(3) does not simply criminalize false statements "knowingly" made like the statute at issue in *Wells*; the government must also prove those statements

were made "fraudulently."   In *Neder v. United States*, 527 U.S. 1, 20-21 (1999), the Supreme Court, applying the *Wells* framework, held that the use of the term "fraudulent" in the mail fraud, wire fraud and bank fraud statutes showed Congress intended to require proof of materiality.  *See* 18 U.S.C. §§ 1341 (mail fraud), 1343 (wire fraud) and 1344 (bank fraud).  The Court reasoned that "actionable 'fraud' had a well-settled meaning at common law"; "'fraud' required a misrepresentation or concealment of *material* fact." *Neder,* 527 U.S. at 22 (emphasis in original).  "Indeed, . . . the common law could not have conceived of 'fraud' without proof of materiality."  *Id.* (citing *BMW of N. Am., Inc. v. Gore*, 517 U.S. 559, 579 (1996); Restatement (Second) of Torts § 538 (1977); *Smith v. Richards*, 13 Pet. 26, 39 (U.S. 1839) and 1 J. Story, *Commentaries on Equity Jurisprudence* § 195 (10th ed. 1870)).  Because the statutes used the term "fraudulent," the Court "*presume[d]* that Congress intended to incorporate materiality 'unless the statute otherwise dictates.'" *Id.* at 23 (emphasis in original) (quoting *Nationwide Mut. Ins. v. Darden*, 503 U.S. 318, 322 (1992)).  The same analysis appears to apply with equal force in the case at bar; the use of the term "fraudulently" in 18 U.S.C. § 152(3) is evidence that materiality is required.  *Cf. Aronofsky v. Bostian*, 133 F.2d 290, 292 (8th Cir. 1943) (equating the "knowingly and fradulently" language of what is now 18 U.S.C. § 152(2) as requiring the government to prove "all the elements involved in perjury at common law, namely an intentional untruth in a matter material to an issue which is itself material.") (citing *Willoughby v. Jamison*, 103 F.2d 821, 823 (8th Cir. 1939)).

Second, 18 U.S.C. § 152(3), unlike the statute at issue in *Wells*, also requires that the false statement be made "under penalty of perjury." 18 U.S.C. § 152(3).  Like fraud, perjury required materiality at common law. *See, e.g., id.* at 292; *People v. Teal*, 89 N.E. 1086, 1087 (N.Y. 1909) ("From time immemorial the common law has made the materiality of false testimony an essential ingredient of the crime of perjury."); *see also*

*Johnson v. United States*, 520 U.S. 461, 465 (1997) (recognizing that the federal perjury statute, 18 U.S.C. § 1623, expressly requires proof of a "false material declaration" under oath). On account of the use of the loaded common law phrase "under penalty of perjury" in 18 U.S.C. § 152(3), the court must presume materiality is required. *Neder*, 527 U.S. at 22.

The question, then, is whether there is anything in 18 U.S.C. § 152(3) that "dictates otherwise." *Id.* As in *Neder*, the court cannot find anything in the statute that dictates otherwise. *Id.* Therefore, the court concludes the statute requires materiality, in spite of the fact that Congress did not expressly require materiality. *Id.*

### c. *Legislative History*[8]

The legislative history of 18 U.S.C. § 152(3) also indicates materiality is an element of the offense. The statute was enacted in 1976 as part of Public Law 94-550. Pub. L. 94-550, 90 Stat. 2534, 1976 HR 15531 (approved October 18, 1976). The House Committee on the Judiciary stated that "[t]he purpose of [Public Law 94-500] is to permit the use in Federal proceedings of unsworn declarations given under penalty of perjury in lieu of affidavits." H.R. Rep. No. 94-1616. At the time, oaths were required in a variety of proceedings, resulting in great inconvenience and heavy reliance upon notaries. *Id.* The legislation was designed to provide a convenient alternative to affidavits and sworn documents, by simply "permit[ting] the signer to subscribe to a document that expressly provides that it is being executed subject to the penalties of perjury . . . ." *Id.* It is clear, however, that Congress contemplated that penalties of perjury would still apply; although the legislation dispensed with the formality of the oath, the substance and consequences remained the same. It stands to reason that Congress did not intend to drop the materiality

---

[8] Although the *Neder* court did not engage in the last prong of the *Wells* analysis, for the sake of completeness, the court will do so anyway.

requirement. Public Law 94-550 simply supplemented the existing bankruptcy statute, which criminalizes "knowingly and fraudulently mak[ing] a false oath or account" in a bankruptcy case. *See* 18 U.S.C. § 152(2); *see also United States v. Cutter*, 313 F.3d 1, 4 n.4 (1st Cir. 2002) (concluding 18 U.S.C. § 152(2) requires materiality); *United States v. Lindholm*, 24 F.3d 1078, 1082-83 (9th Cir. 1994) (same); *Meer v. United States*, 235 F.2d 65, 67 (10th Cir. 1956) (interpreting identical predecessor to 18 U.S.C. § 152(2) to require materiality and stating that "Congress did not intend to make it an offense to make a false statement in a bankruptcy proceeding, where such statement involved matters extraneous to such proceeding and not material to the inquiry or the issue presented"); *Aronofsky,* 133 F.2d at 292 (similar); *In re Slocum*, 22 F.2d 282, 285 (2d Cir. 1927) ("The words of the statute requiring that the testimony be given 'knowingly and fraudulently' mean no more than 'an intentional untruth in a matter material to the issue which is itself material.'").

This analysis of the legislative history of the statute is consistent with the opinion of a leading bankruptcy law treatise. Collier writes:

> [T]he materiality requirement was a judicial addition to section 152(2), and was well in place before the 1976 addition of section 152(3). Congress did not choose to add a materiality requirement to section 152(3) in 1976, thus raising the question of what Congress intended.
>
> Arguments exist on both sides . . . .
>
> The better argument is that Congress intended to carry over the materiality requirement. . . . [I]t seems reasonable to view section 152(3) as a mere extension of section 152(2), complete with section 152(2)'s unstated materiality requirement. This construction would also have the effect of reducing strategic behavior by reducing the differences between the two subsections to that of the form of testimony or statement at

issue.

Collier ¶ 7.02, at 1-7. That is, "[s]ection 152(3) is patterned after section 152(2) [and] extends the sanction for giving false testimony to those situations in which a formal oath is not administered, but in which [28 U.S.C. § 1746] permits instead a declaration, certificate, verification or other statement." *Id.*

The government points out that Public Law 94-550 permitted unsworn declarations in a number of statutes other than 18 U.S.C. § 152, including the general perjury statute, 18 U.S.C. § 1621, and the military justice perjury statute, 10 U.S.C. § 931. The government argues that the court should infer from the fact that the oath provisions of these perjury statutes, unlike 18 U.S.C. § 152(2), expressly contained a materiality requirement before they were amended, Congress intended that 18 U.S.C. § 152(3) would not contain a materiality element. This argument is unconvincing. The Judiciary Committee report expressly states that Section 4 of Public Law 94-550, the section of the legislation that enacted 18 U.S.C. § 152(3), was intended to amend "a specific perjury statute in the same manner as section 2 amends the general perjury statute." H.R. No. 94-1616. It therefore stands to reason that nothing in Section 4 was specially designed to remove a materiality requirement from 18 U.S.C. § 152. At the very least, there is nothing in the legislative history of the statute that "dictates" that the court set aside the presumption, which arises from Congress' use of loaded common law terms such as "fraudulently" and "under the penalty of perjury," that Congress intended to incorporate materiality into 18 U.S.C. § 152(3). *See Neder,* 527 U.S. at 23.

For the foregoing reasons, the court determines 18 U.S.C. § 152(3) requires the government to prove materiality. The court's decision is consistent with several leading interpretations of the statute. Collier ¶ 7.02, at 1-7; 2 Kevin F. O'Malley et al., *Federal Jury Practice & Instructions*, § 26.07, at 132-33 (5th ed. 2000) (requiring materiality);

Eleventh Circuit Pattern Jury Instructions (Criminal Cases), Instruction No. 3 (2003) (discussing *Wells* and *Neder* and concluding materiality is still required in 18 U.S.C. § 152(4)) (reprinted in Sand et al., *Modern Federal Jury Instructions (Criminal)*, at 11-53 (2005) ["Sand"]); Pattern Criminal Jury Instructions for the Seventh Circuit, Instruction for 18 U.S.C. § 152(2) and (3): False Oath, False Declaration Under Penalty of Perjury—Elements (1998) (reprinted in Sand at 7-85) (requiring materiality without discussion). At least two post-*Wells* courts, which, although they have not discussed the impact of *Wells*, have also concluded materiality is required to prove a violation of Section 152(3). *See, e.g., United States v. Gellene*, 182 F.3d 578, 586 n.12, 587-88 (7th Cir. 1999); *United States v. O'Connor*, 158 F. Supp. 2d 697, 727 (E.D. Va. 2001). The court also recognizes that whenever there is a grievous ambiguity or uncertainty in the structure of a statute, it must apply the rule of lenity and resolve all doubt in favor of Defendant. *See United States v. Chipps*, 410 F.3d 438, 448 (8th Cir. 2005); *United States v. Clawson*, 408 F.3d 556, 558-59 (8th Cir. 2005).[9]

---

[9] The court notes its conclusion is consistent with long-standing interpretations of an analogous bankruptcy statute, 11 U.S.C. § 727(a)(4)(A), which provides that the bankruptcy court shall not grant the debtor a discharge if "the debtor knowingly and fraudulently, in or in connection with the case . . . made a false oath or account." 11 U.S.C. § 727(a)(4)(A). *See In re Wills*, 243 B.R. 58, 62 n.3 (9th Cir. B.A.P. 1999) (recognizing similarities between 18 U.S.C. § 152 and 11 U.S.C. § 727 and using one to interpret the other). Section 727 "clearly extends" to documents filed under penalty of perjury. *In re Arcuri*, 116 B.R. 873, 880 (Bankr. S.D.N.Y. 1990) (citing H. Sommer, *Consumer Bankruptcy Law & Practice* § 14.2.2.3 (3d ed. 1988) and B. Weintraub & A. Resnick, *Bankruptcy Law Manual* ¶ 3.03[4][a] at 3-9-10 (2d ed. 1986)), *abrogated on other grounds in Grogan v. Garner*, 498 U.S. 279, 286 (1991)). Courts have held that materiality must be shown for denying a debtor discharge. *See, e.g., In re Bren*, 122 Fed. Appx. 285, 286 (8th Cir. B.A.P. 2005) (unpublished disposition) ("A false oath bars discharge in bankruptcy if it is both material and made with an intent to defraud."); *Mertz v. Rott*, 955 F.2d 596, 598 (8th Cir. 1992) ("For such a false oath or account to bar a

### 3. *Intent to Defraud*

The government argues that even if materiality is an element of 18 U.S.C. § 152(3), a new trial is not required because the jury implicitly found Defendant's false statements were material. First, the government points out that the court instructed the jury that it was required to find "intent to defraud" as an element of the offense. The Eighth Circuit Court of Appeals has held that the district court's failure to give a specific, separate materiality instruction was harmless because elsewhere the instructions "included [the] concept" of materiality. *See Hays v. Hoffman*, 325 F.3d 982, 992 (8th Cir. 2003).

There a number of problems with the government's argument. The jury instructions defined "intent to defraud" as "to act knowingly and with the intent to deceive someone for the purpose of causing some financial loss to another or bringing about a financial gain to oneself or another, to the detriment of a third party." This does not "include the concept of materiality," i.e., having a natural tendency to influence, or being capable of influencing, the decision of the decisionmaking body to which it was addressed. *Kungys*, 485 U.S. at 770. Indeed, the proof is in the proverbial pudding: here, when the jury was specifically asked in a special interrogatory whether Defendant's false statements were material, the jury was unable to unanimously answer "Yes." Therefore, there was not an implicit finding of materiality, as the government argues.

### 4. *Disposition*

In light of the error in the jury instructions, the court concludes the jury's verdict on Count 2 cannot stand. Defendant is entitled to a new trial pursuant to Rule 33 because the jury did not find Defendant committed all of the elements of the crime; the court

---

discharge, the false statement must be 'material.'"); *Bauman v. Feist*, 107 F. 83, 85 (8th Cir. 1901) ("Plainly, the false oath contemplated . . . must be one material to the proceedings in bankruptcy.").

concludes a miscarriage of justice would occur should the jury's verdict stand. *See Campos*, 306 F.3d at 579; *see also United States v. Gaudin*, 515 U.S. 506, 511 (1995) ("The Constitution gives a criminal defendant the right to demand that a jury find him guilty of all the elements of the crime with which he is charged; one of the elements in the present case is materiality; [the defendant] therefore had a right to have the jury decide materiality.").

Defendant also appears to argue that if the court were to decide materiality were an element of Count 2, he is entitled to a judgment of acquittal pursuant to Rule 29. To the extent this claim is based on the sufficiency of the evidence, the court concludes there is sufficient evidence in the record from which a reasonable jury could have found materiality. A reasonable jury could have found Defendant's false statements on his bankruptcy petition had a natural tendency to influence, or were capable of influencing, the outcome of the bankruptcy proceeding.

In determining that a new trial is warranted on Count 2, the court is cognizant of the Fifth Amendment's double jeopardy clause and the doctrine of collateral estoppel. *Cf. Ashe v. Swenson*, 397 U.S. 436, 443 (1970) (holding that "[w]hen an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in any future lawsuit."). Here, the jury indicated in its answer to the special interrogatory that it could not unanimously find that Defendant's false statements were material. However, the jury's answer to the special interrogatory does not amount to a finding that Defendant's statements were immaterial. The jury merely indicated it could not unanimously find that Defendant's statements were material; the court would have to speculate to infer from this answer that the jury unanimously found the Defendant's statements were immaterial. Collateral estoppel and double jeopardy "bar[] relitigation between the same parties of issues *actually determined* at a previous

trial." *Simpson v. Florida*, 403 U.S. 384, 385 (1971) (emphasis added, citations and internal quotation marks omitted). The jury did not actually determine that Defendant's false statements were immaterial to his bankruptcy proceeding, and thus acquittal is not warranted. *Id.*; *see also United States v. Console*, 13 F.3d 641, 664-65 (3d Cir. 1993) (opining in dicta that "even if the district court had submitted the requested special interrogatories to the jury and the jury had indicated that certain predicate acts had not been established, [defendant's] reprosecution . . . based on these predicate acts would not have violated his double jeopardy rights"). Therefore, the court concludes Defendant may stand trial again on Count 2, despite the jury's answer to the special interrogatory.

## VI. CONCLUSION

**IT IS THEREFORE ORDERED** that Defendant Daniel P. Mitchell's Motion for Judgment of Acquittal or For New Trial (docket no. 49) is **DENIED IN PART AND GRANTED IN PART.** The Motion is **DENIED** with respect to Count 1 of the Indictment. The court **GRANTS** Defendant's Motion on Count 2 of the Indictment pursuant to Federal Rule of Criminal Procedure 33. Defendant is entitled to a new trial on Count 2.

**IT IS SO ORDERED.**

**DATED** this 4th day of January, 2006.

LINDA R. READE
JUDGE, U. S. DISTRICT COURT
NORTHERN DISTRICT OF IOWA