**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF IOWA**
**CEDAR RAPIDS DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ‖ | |
| Plaintiff, | ‖ | No. 05-CR-50-LRR |
| vs. | ‖ | **ORDER** |
| DANIEL P. MITCHELL, | ‖ | |
| Defendant. | ‖ | |

_____

### *TABLE OF CONTENTS*

I.      *INTRODUCTION* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **2**
II.     *PROCEDURAL HISTORY* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **2**
III.    *TRIAL EVIDENCE* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **4**
        A.      *Ownership of WFI Bamboo* . . . . . . . . . . . . . . . . . . . . . . . . **5**
        B.      *Debt Payments Made within 90 Days.* . . . . . . . . . . . . . . . . . **7**
        C.      *Income* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **8**
IV.     *STANDARDS OF REVIEW* . . . . . . . . . . . . . . . . . . . . . . . . . . . . **11**
        A.      *Motion for Judgment of Acquittal* . . . . . . . . . . . . . . . . . . . **11**
        B.      *Motion for New Trial* . . . . . . . . . . . . . . . . . . . . . . . . . . . . **13**
V.      *ANALYSIS* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **14**
        A.      *Motion for Judgment of Acquittal* . . . . . . . . . . . . . . . . . . . **14**
                1.      *Defendant's Arguments* . . . . . . . . . . . . . . . . . . . . . . **14**
                2.      *Legal Analysis* . . . . . . . . . . . . . . . . . . . . . . . . . . . **15**
                        a.      *Ownership of WFI Bamboo* . . . . . . . . . . . . . . **16**
                        b.      *Third-Party Payments on Personal Debts* . . . . . . . . **17**
                        c.      *Income* . . . . . . . . . . . . . . . . . . . . . . . . . . . **19**
                        d.      *Advice of Counsel* . . . . . . . . . . . . . . . . . . . **21**
                        e.      *Double Jeopardy* . . . . . . . . . . . . . . . . . . . . **22**
        B.      *Motion for New Trial* . . . . . . . . . . . . . . . . . . . . . . . . . . . . **23**
                1.      *Defendant's Arguments* . . . . . . . . . . . . . . . . . . . . . . **23**
                2.      *Legal Analysis* . . . . . . . . . . . . . . . . . . . . . . . . . . . **24**
                        a.      *Ownership of WFI Bamboo* . . . . . . . . . . . . . . **24**
                        b.      *Advice of Counsel* . . . . . . . . . . . . . . . . . . . **24**
VI.     *CONCLUSION* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **24**

## I. INTRODUCTION

The matter before the court is Defendant Daniel P. Mitchell's Motion for Acquittal, Arrest of Judgment and New Trial ("Motion") (docket no. 174).

## II. PROCEDURAL HISTORY

On May 19, 2005, a grand jury returned a two-count Indictment against Defendant. Both counts concerned Defendant's conduct in a voluntary Chapter 7 bankruptcy proceeding he filed in 2000.

Count 1 charged Defendant with fraudulent concealment of assets in connection with a bankruptcy proceeding, in violation of 18 U.S.C. § 152(1). Count 1 alleged that Defendant knowingly and fraudulently concealed from creditors and trustees (1) his ownership interest in Wood Floors Import Distributor, L.C., d/b/a WFI Bamboo ("WFI Bamboo") and (2) his total income from January 1, 1999, through about July 11, 2000.

Count 2 charged Defendant with making a material false declaration, certificate, verification, and statement, under penalty of perjury as permitted under 28 U.S.C. § 1746, in and in relation to his voluntary bankruptcy petition, in violation of 18 U.S.C. § 152(3). Count 2 alleged that Defendant submitted his bankruptcy petition under penalty of perjury and knowingly and fraudulently failed to disclose certain of his assets, income and debt payments that were material to his voluntary bankruptcy petition.

From August 26 to August 31, 2005, the court held a jury trial ("First Trial"). The jury found Defendant guilty of both counts of the Indictment. On Count 1, the jury unanimously found Defendant fraudulently concealed his income, but it did not unanimously find beyond a reasonable doubt that he fraudulently concealed an ownership interest in WFI Bamboo. On Count 2, the jury found Defendant knowingly and fraudulently made false statements in his bankruptcy petition about his income and debt payments made on behalf of Defendant by WFI Bamboo on an unsecured F & M loan, but it did not unanimously find that Defendant failed to disclose an ownership interest in WFI

2

Bamboo.

In response to a special interrogatory on Count 2, the jury stated it did not unanimously find that Defendant's statements were material. On the verdict form for Count 2, the court asked the jury: "Do you unanimously find beyond a reasonable doubt that one or more of the false declarations, certificate[s], verification[s] and statement[s] under penalty of perjury were 'material' matters, that is, had a natural tendency to influence, or were capable of influencing, the outcome of the bankruptcy proceeding?" The jury answered "No."

On September 7, 2005, Defendant filed a Motion for Acquittal or for New Trial. On September 20, 2005, the government filed a Resistance to Defendant's Motion for Judgment of Acquittal or for New Trial. On January 4, 2006, the court granted in part and denied in part Defendant's Motion for Acquittal or for New Trial. The court determined that Defendant was entitled to a new trial on Count 2 of the Indictment, because, although the jury found him guilty of Count 2, it could not unanimously find that any false representation was material.

On May 16, 2006, Defendant filed a Motion to Dismiss Counts 1 and 2 of the Indictment. On May 18, 2006, the court denied Defendant's Motion to Dismiss Counts 1 and 2 of the Indictment. On May 26, 2006, Defendant filed a Notice of Appeal of the court's Order denying Defendant's Motion to Dismiss Counts 1 and 2 of the Indictment.

Defendant was sentenced on July 12, 2006 to 12 months imprisonment followed by a three-year term of supervised release. Defendant was ordered to pay 1) a $100 special assessment; 2) a $3,000 fine; and 3) restitution in the amount of $14,180. Defendant appealed his conviction and sentencing.

On February 6, 2007, the Eighth Circuit Court of Appeals reversed Defendant's conviction under Count 1 of the Indictment and affirmed the court's denial of the Motion to Dismiss Count 2 of the Indictment. *United States v. Daniel P. Mitchell*, 476 F.3d 539

(8th Cir. 2007). As to Count 1, the Eighth Circuit Court of Appeals noted that prepetition income is not an asset of the bankruptcy estate. Therefore, because the jury convicted Defendant under Count 1 under the theory that he falsely concealed prepetition income, his conviction under Count 1 was improper. *Id.* at 544. As to Count 2, the Eighth Circuit Court of Appeals reasoned that the jury's failure to unanimously find that Defendant's false representations were material does not imply that the jury unanimously found such representations immaterial. Therefore, the Eighth Circuit Court of Appeals determined that the court correctly held that no violation of the Due Process Clause occurred. *Id.* at 545.

On April 27, 2007, the court tried Defendant on the charge pled in Count 2 of the Indictment ("Second Trial"). Assistant United States Attorney Ian Thornhill represented the government. Stanley Roush and Peter Riley represented Defendant. On May 2, 2007, following a three-day trial, the jury returned a unanimous verdict of guilty against Defendant on the charge in Count 2 of the Indictment. On May 9, 2007, Defendant filed the instant Motion. On May 16, 2007, the government filed a resistance ("Resistance") to the Motion. The court finds the matter fully submitted and ready for review.

### III. TRIAL EVIDENCE

The evidence presented at the Second Trial substantially replicated the evidence presented at the First Trial, except that in the Second Trial the government called Defendant's former wife, Kathy (Mitchell) Bigelow, to testify.

The issues at trial revolved around Defendant's written statements on his personal voluntary petition for chapter 7 bankruptcy protection on July 12, 2000 and oral statements at the First Meeting of Creditors. In the Statement of Financial Affairs portion of his bankruptcy petition, Defendant declared, under penalty of perjury,[1] that (1) he did not hold

---

[1] "I declare under penalty of perjury that I have read the foregoing answers (continued...)

any interest in any businesses,[2] (2) no payments exceeding $600 were made toward any of his debts within the 90 days preceding the filing of his bankruptcy petition[3] and (3) he had no income from employment in 1999 or 2000.[4]   In Schedule I of his bankruptcy petition, Defendant, however, stated he was receiving $1,000 gross pay per month from WFI Bamboo, with an estimated net monthly take home pay of $800 per month. Defendant verified the accuracy of his bankruptcy petition under oath at a "341 Meeting of Creditors" on August 7, 2000.

### A.    Ownership of WFI Bamboo

In January 1998, Mitchell and two other persons founded WFI.  At the time, Mitchell owned fifty per cent of the stock of the company and the two other owners each owned twenty-five per cent of the stock.  Although Defendant maintained at trial that he transferred his ownership in WFI to his wife, Kathy (Mitchell) Bigelow, the government provided evidence to establish that if any transfer took place, it was on paper only and a sham.

---

[1] (…continued)
contained in the Statement of Financial Affairs and any attachments thereto and that they are true and correct."

[2] Schedule B required Defendant to "list all personal property of whatever kind." Schedule B includes a line-item for "stock and interests in incorporated . . . businesses."

[3] Question 3 required Defendant to "[l]ist all payments on loans . . . aggregating more than $600 to any creditor, made within 90 days immediately preceding the commencement of this case."  In response, Defendant answered "None."

[4] Question 1 required Defendant to "[s]tate the gross amount of income the debtor has received from employment, trade, or profession, or from operation of the debtor's business from the beginning of this calendar year to the date this case was commenced. State also the gross amounts received during the two years immediately preceding this calendar year."  In response, Defendant listed $0 for 1999 and 2000; he listed $60,000 for 1998.

5

At trial, the government presented evidence that, contrary to his personal bankruptcy petition, Defendant owned WFI Bamboo in 2000. Although Defendant produced WFI Bamboo meeting minutes that indicated he transferred all of his interest in the business to Ms. Bigelow in 1998, the government contended that the purported 1998 transaction was a sham that Defendant concocted after the fact to shield his assets from creditors and trustees during his personal bankruptcy. The government maintained that the transfer did not take place until 2000, and, therefore, Defendant should have disclosed his ownership of WFI Bamboo in his bankruptcy petition.

WFI Bamboo's corporate attorney, Nicolas Abou-Assaly, testified that Defendant and Ms. Bigelow did not send Mr. Abou-Assaly the meeting minutes allegedly memorializing the transfer of Defendant's stock to his wife until March of 2000. Mr. Abou-Assaly also testified that Defendant called him twice in 1999 to tell him that Defendant wanted Ms. Bigelow to have his interest in WFI Bamboo, but Defendant, on each occasion, did not mention the minutes documenting the alleged 1998 transfer.

The jury also heard a recording of Defendant testifying under oath at WFI Bamboo's bankruptcy hearing ("Hearing") in March of 2003. WFI Bamboo, by then, had filed for bankruptcy. Defendant was attempting to gain control of WFI Bamboo's inventory in its bankruptcy proceedings. At the Hearing, Defendant stated:

> I feel as an owner, I've never lost that position. Just because a piece of paper takes it away from me does not change the fact that I started this, I ran it, I put 65 hours a week in this company.

Assistant United States Trustee ("AUST") Janet Reasoner testified that Defendant admitted to her in January of 2003 that he founded the company in 1998 and transferred WFI Bamboo to Ms. Bigelow in 2000. She also testified that Defendant said he was the president of WFI Bamboo until he was fired in October of 2002. Defendant admitted at the Hearing that, although he wrote "laborer" on his schedule, he was president and CEO

of WFI Bamboo when he signed his bankruptcy petition in July of 2000.

Defendant maintained that he divested himself of WFI Bamboo in 1998. For example, Ms. Bigelow's 1998 tax return showed that she owned 75% of WFI Bamboo, the ownership share the government attributed to Defendant. WFI Bamboo's 2000 tax return indicated that no change in ownership took place during 2000. The tax returns upon which Defendant relied, however, were not prepared until 2000 and 2002, respectively. Also, WFI Bamboo's 1998 tax return did not indicate any change in ownership had taken place that year.

Ms. Bigelow offered testimony on the ownership of WFI Bamboo as well. She testified that at all times, between the company's inception in 1998 through Defendant's chapter 7 filing in 2000, Defendant was president, owner and operator of WFI Bamboo. She explained that Defendant told her in March of 2000 to prepare documents suggesting that he transferred his ownership interest in WFI Bamboo to her in November of 1998 because he wanted to retain control over the business in spite of a planned personal bankruptcy filing. She stated that at no time before Defendant's bankruptcy filing did she exercise her rights as an owner nor did Defendant relinquish any control over operations or right of ownership.

### B.      Debt Payments Made within 90 Days

April 13, 2000 was 90 days immediately prior to Defendant's bankruptcy filing of July 12, 2000. The government presented evidence of the following debt payments WFI Bamboo paid on Defendant's personal loan with F&M Bank (account # 200099152) that were made within the 90-day period:

> May 2, 2000: Check # 2151, signed by Defendant, from WFI Bamboo to F&M Bank for $6,500; $1,900 applied to loan account # 200099152.

> May 25, 2000: Check # 2203 from WFI Bamboo to F&M Bank for $6,700; $2,000 applied to loan account # 200099152.

7

> July 6, 2000: Check # 2268, signed by Defendant, from WFI Bamboo to F&M Bank for $6,700; $2,000 applied to loan account # 200099152.

These three amounts ($1,900, $2,000 and $2,000) each exceed $600. Defendant signed the checks on behalf of WFI Bamboo on two of the payments in particular (May 2 and July 6).

### C. Income

The government also presented evidence to show WFI Bamboo (1) made payments between February and July of 2000 on a personal loan Defendant incurred with his former father-in-law at F&M Bank and (2) made payments in 1999 and 2000 on a truck Defendant owned. The government contended that these debt payments constituted income that Defendant was illegally attempting to shield from his creditors. Defendant was not, as alleged in his bankruptcy proceedings, a "laborer" at WFI Bamboo making $1,000 per month; instead, Defendant was the owner of WFI Bamboo, hiding his true salary through the debt payments scheme.

The record contains evidence that WFI Bamboo made payments on a personal loan Defendant had with F&M Bank. The government presented evidence of the following debt payments on the F&M loan:

> February 28, 2000: Check # 2063, signed by Defendant, from WFI Bamboo to F&M Bank for $963.91; entire amount applied to loan account # 200099152.

> March 23, 2000: Check # 068680 from South Slope Cooperative Communication Company to WFI Bamboo for $116.92, signed over to F&M Bank; entire amount applied to loan account # 200099152.

> March 27, 2000: Check # 2097, signed by Defendant, from WFI Bamboo to F&M Bank for $6,700; $2,000 applied to loan account # 200099152.

8

May 2, 2000: Check # 2151, signed by Defendant, from WFI Bamboo to F&M Bank for $6,500; $1,900 applied to loan account # 200099152.

May 25, 2000: Check # 2203 from WFI Bamboo to F&M Bank for $6,700; $2,000 applied to loan account # 200099152.

July 6, 2000: Check # 2268, signed by Defendant, from WFI Bamboo to F&M Bank for $6,700; $2,000 applied to loan account # 200099152.

July 27, 2000: Check # 2328, signed by Defendant, from WFI Bamboo to F&M Bank for $5,000; $2,000 applied to loan account # 200099152.[5]

At the Hearing, Defendant testified under oath that the debt payments were income. When asked by AUST Reasoner if the debt payments were "like income to you?," Defendant replied: "Of course." Defendant personally signed at least five of the seven debt-payment checks on behalf of WFI Bamboo. Defendant presented a handwritten note to AUST Reasoner in advance of the Hearing. The note stated: "Being the . . . starter of the Co. . . . [$]425.00 take home every two weeks[?] Ha! Ha!" Also, a sticky note was attached to a payment schedule on the F&M Bank loan. The payment schedule listed payments from March 27, 2000, to October 7, 2002. Defendant wrote on the sticky note: "Payments on loan line of credit. Since 3-27-2000. This was income to Dan. Not a loan from [WFI Bamboo] to pay a loan." At the Hearing, Defendant testified that he was receiving approximately $2,000 each month in debt payments in 2000. Additionally, Ms. Bigelow testified that Defendant directed her to prepare, and in one case sign, these checks for the payments on the F&M loan.

---

[5] The July 27, 2000 debt payment was made after Defendant filed his bankruptcy petition. The government introduced the July 27, 2000 debt payment to show a pattern of activity and did not contend that Defendant was required to disclose it on his bankruptcy petition.

9

The record also contains evidence that WFI Bamboo made payments on a 1997 Ford F-150 truck that Defendant owned. The government presented evidence of the following debt payments on the truck:

> September 24, 1999: Check # 1752, signed by Defendant, from WFI Bamboo to Ford Credit for $700.

> November 1, 1999: Check # 1834, not signed by Defendant, from WFI Bamboo to Ford Credit for $1,500.

> January 14, 2000: Check # 1962, signed by Defendant, from WFI Bamboo to Ford Credit for $1,500.

> February 24, 2000: Check # 2044, signed by Ms. Bigelow, from WFI Bamboo to Ford Credit for $1,500.

> July 31, 2000: Check # 2337, signed by Defendant, from WFI Bamboo to Ford Credit for $1,500.[6]

Defendant also delivered to AUST Reasoner a copy of WFI Bamboo's Schedule of Personal Property ("Schedule"). The Schedule listed a 1997 Ford F-150 truck. Defendant claimed he owned the truck and that WFI Bamboo did not. Defendant wrote on a sticky note: "Dan's personal. Transferred to [my son on] Oct[ober] 18[, 2002.]" Defendant also gave AUST Reasoner a copy of the truck's title. The truck was titled to Defendant until October 17, 2002, when he transferred it to his son. Attached to the Schedule and the title was another sticky note. Defendant wrote on the note: "Proof ownership of truck. Dan bought truck in the Summer of 97 and has always been in his name till now. Gave to my son. 10-17-02." Furthermore, Ms. Bigelow testified that the truck was Defendant's personal vehicle at all times prior to Defendant's bankruptcy filing and that Defendant

---

[6] The July 31, 2000 debt payment was made after Defendant filed his bankruptcy petition. The government introduced the July 27, 2000 debt payment to show a pattern of activity and did not contend that Defendant was required to disclose it on his bankruptcy petition.

10

directed her to make payments on the vehicle from funds in the WFI Bamboo bank account.

## IV. STANDARDS OF REVIEW

### A. Motion for Judgment of Acquittal

Federal Rule of Criminal Procedure 29 provides that "the court on the defendant's motion must enter a judgment of acquittal of any offense for which the evidence is insufficient to sustain a conviction." Fed. R. Crim. P. 29(a). Such a motion is permitted after trial, in which case the court may set aside the verdict and enter a judgment of acquittal. Fed. R. Crim. P. 29(c). It is well settled, however, that "[j]ury verdicts are not lightly overturned." *United States v. Stroh*, 176 F.3d 439, 440 (8th Cir. 1999). "A motion for judgment of acquittal should be granted only where the evidence, viewed in the light most favorable to the government, is such that a reasonably minded jury must have a reasonable doubt as to the existence of any of the essential elements of the crime charged." *United States v. Mundt*, 846 F.2d 1157, 1158 (8th Cir. 1988); *see also United States v. Cacioppo*, 460 F.3d 1012, 1021 (8th Cir. 2006) ("A motion for judgment of acquittal should be granted only 'if there is a no interpretation of the evidence that would allow a reasonable jury to find the defendant guilty beyond a reasonable doubt.'" (quoting *United States v. Gomez*, 165 F.3d 650, 654 (8th Cir. 1999))); *United States v. Surratt*, 172 F.3d 559, 563 (8th Cir. 1999) (holding that evidence should be viewed in light most favorable to the government). The court must uphold the jury's verdict so long as "a reasonable-minded jury could have found [Defendant] guilty beyond a reasonable doubt." *United States v. Hayes*, 391 F.3d 958, 961 (8th Cir. 2004). It is not the province of the court to weigh the evidence or evaluate the credibility of witnesses. *Id.* Those tasks are for the jury. *Id.*

Acquittal may also turn upon a proper application of the Double Jeopardy Clause. The Double Jeopardy Clause of the Fifth Amendment provides that "[n]o person shall

11

be . . . subject for the same offence twice to be put in jeopardy of life or limb." U.S. Const. amend. V. The protection amounts to a bar "against successive prosecutions for the same offense after acquittal or conviction and against multiple criminal punishments for the same offense." *Monge v. California*, 524 U.S. 721, 727-28 (1998); *see also United States v. Rea*, 300 F.3d 952, 956 (8th Cir. 2002) (stating that double jeopardy clause includes protections against second prosecution after acquittal or conviction) (quoting *North Carolina v. Pearce*, 395 U.S. 711, 717 (1969) (overruled in part by *Alabama v. Smith*, 490 U.S. 794 (1989))). Defendant bears the burden "to demonstrate that the issue whose relitigation he seeks to foreclose was actually decided in the first proceeding." *Dowling v. United States*, 493 U.S. 342, 350 (1990); *see also United States v. Bagus*, 761 F.2d 506, 508 (8th Cir. 1985) ("'[T]he burden of proof is upon the defendant to show that the jury's verdict in the prior trial necessarily decided the issues raised in the second prosecution.'" (internal quotations omitted) (internal citations omitted)).

"The constitutional prohibition against successive prosecutions does not prevent the government from retrying a defendant who succeeds in getting his first conviction set aside because of trial error in the proceedings leading to conviction." *Rea*, 300 F.3d at 956 (citing *Lockhart v. Nelson*, 488 U.S. 33, 38 (1988) and *United States v. Ball*, 163 U.S. 662, 671-72 (1896)). The corollary to the government's right to retry such a defendant is the principle of "continuing jeopardy," namely, jeopardy does not terminate but continues after a defendant's conviction has been overturned for trial error. *Rea*, 300 F.3d at 956 (citing *Justices of Boston Mun. Court v. Lydon*, 466 U.S. 294, 308 (1984)). In such cases, "continuing jeopardy" will apply as long as "criminal proceedings against an accused have not run their full course." *Price v. Georgia*, 398 U.S. 323, 326 (1970).

The Double Jeopardy Clause's protections also encompass the doctrine of collateral estoppel. *United States v. Wells*, 347 F.3d 280, 285 (8th Cir. 2003); *Prince v. A.L.*

*Lockhart*, 971 F.2d 118, 123 (8th Cir. 1992).  Specifically, "when an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in any future lawsuit." *Ashe v. Swenson*, 397 U.S. 436, 443 (1970).  However, for a fact to constitute an "ultimate fact," it must meet two conditions.  First, the fact must have been "determined by the jury against the government . . . ." *Prince*, 971 F.2d at 123.  Second, "in the second prosecution, that same fact is required to be proved beyond a reasonable doubt in order to convict." *Id*.

The Eighth Circuit Court of Appeals has offered further guidance, in reviewing Defendant's First Trial in particular, on the Double Jeopardy Clause.  "[D]ouble jeopardy is triggered when either (1) a jury acquits a defendant or (2) [sic] makes a factual finding beyond a reasonable doubt that would be fatal to the government's case." *United States v. Mitchell*, 476 F.3d 539, 546 (8th Cir. 2007).

### B.      *Motion for New Trial*

Federal Rule of Criminal Procedure 33 provides that, "[u]pon the defendant's motion, the court may vacate any judgment and grant a new trial if the interest of justice so requires."  Fed. R. Crim. P. 33.  However, "[m]otions for new trials are generally disfavored, *United States v. Campos*, 306 F.3d 577, 579 (8th Cir. 2002), and will be granted only where 'a serious miscarriage of justice may have occurred.'" *United States v. Rice*, 449 F.3d 887, 893 (8th Cir. 2006) (quoting *United States v. Huerta-Orozco*, 272 F.3d 561, 565 (8th Cir. 2001)).  Indeed, "[t]he granting of a new trial under Rule 33 is a remedy to be used only 'sparingly and with caution.'" *United States v. Dodd*, 391 F.3d 930, 934 (8th Cir. 2004) (citing *Campos*, 306 F.3d at 579 (quoting *United States v. Lincoln*, 630 F.2d. 1313, 1319 (8th Cir. 1980))).

Under Rule 33, district courts are granted broad discretion in considering motions for a new trial.  *United States v. LeGrand*, 468 F.3d 1077, 1080 (8th Cir. 2006); *Dodd*, 391 F.3d at 934; *Campos*, 306 F.3d at 579; *United States v. Wilkins*, 139 F.3d 603, 604 (8th Cir. 1998).

13

# V. ANALYSIS

## A. Motion for Judgment of Acquittal

### 1. Defendant's Arguments

Defendant maintains that there was insufficient evidence to convict him in the Second Trial under any of the three theories presented in the verdict forms to Count 2.

First, as to the charge that he made a false statement with regard to his ownership interest in WFI Bamboo, Defendant argues that because the bankruptcy filing only required Defendant to list any ownership interest as of the date of the filing, any evidence that Defendant "back-dated" a transfer of the ownership is irrelevant to whether he held such an interest at the time of his bankruptcy filing. Nevertheless, even if there was a finding of a false statement regarding the ownership interest, it was not material.

Second, Defendant argues that his response regarding third-party payments of his personal debts was objectively reasonable, *see, e.g., United States v. Rowe*, 144 F.3d 15, 21 (1st Cir. 1998) (holding that "an answer to a question is not fraudulent if there is an objectively reasonable interpretation of the question under which the answer is not even false"). Furthermore, such statements were accurate, and, if they were inaccurate, they were not material.

Third, Defendant argues that any false statement he may have made regarding his income between January 1, 1999 and the date of his filing was made on advice from his counsel and in any case was immaterial. Defendant also argues that the Eighth Circuit Court of Appeals has already ruled in his case that income is not an estate asset, *Mitchell*, 476 F.3d at 544, thus mandating acquittal.

Defendant also argues for acquittal on two grounds under the Double Jeopardy Clause for a bar to retrial under Count 2. First, on Count 2, the jury in the First Trial did not unanimously find that Defendant failed to disclose an ownership interest in WFI Bamboo. Defendant argues that a failure to unanimously find Defendant acted as such

14

amounts to an acquittal for purposes of the Double Jeopardy Clause.

Second, in response to the special interrogatory on Count 2, the jury in the First Trial stated that it did not unanimously find that Defendant's statements were material. Again, Defendant argues that the failure to unanimously so find amounts to an acquittal barring future prosecution on double jeopardy grounds.

### 2. *Legal Analysis*

Count 2 charges Defendant with making false statements on his bankruptcy petition, in violation of 18 U.S.C. § 152(3). The subsection reads as follows: "A person who—(3) knowingly and fraudulently makes a false declaration, certificate, verification, or statement under penalty of perjury . . . in or in relation to any case under title 11 [of the United States Code] . . . shall be fined under this title, imprisoned not more than 5 years, or both." 18 U.S.C. § 152(3). The offense has been described as having four elements, which are: 1) the defendant was a debtor in bankruptcy case under title 11 of the United States Code; 2) the defendant made a false declaration, certificate, verification or statement regarding a matter material to the bankruptcy proceeding; 3) the defendant knew the declaration, certificate, verification or statement was false when it was made; and 4) the defendant did so with the intent to defraud. *See* Manual of the Model Criminal Jury Instructions for the District Courts of the Eighth Circuit § 6.18.152B (2006). The Eighth Circuit Court of Appeals has held that § 152(3) imposes a requirement of materiality, even though the term is absent from the statute's text; material "matters include not only those pertinent to the nature and extent of the bankrupt's assets, but also include those pertinent to his financial transactions." *United States v. Yagow*, 953 F.2d 427, 432 (8th Cir. 1992); *see also United States v. Moss*, 14 Fed. Appx. 749, 750 (8th Cir. 2001) (holding that materiality extends beyond statements relating to estate's assets).

The government propounded three theories under which Defendant allegedly made fraudulent statements in his bankruptcy petition: a) the ownership of WFI Bamboo;

Case 1:05-cr-00050-LRR    Document 188    Filed 08/09/07    Page 15 of 24

b) third-party payments on personal debts; and c) income. Defendant was found guilty in the Second Trial under each of the three theories. The evidence presented at the Second Trial supports each of the jury's three findings. Since Defendant's status as a debtor in bankruptcy under title 11 of the United States Code was never disputed, the court examines the evidence supporting each of the remaining three elements for each of the three theories.

### a.    Ownership of WFI Bamboo

There is more than ample evidence, when "viewed in the light most favorable to the government," *Mundt*, 846 F.2d at 1158, that Defendant knowingly and intentionally made a material fraudulent statement regarding the ownership interest in WFI Bamboo. As to the material false statement element, there was substantial evidence that Defendant maintained ownership and control of WFI Bamboo well after the filing date, regardless of whether the jury believed the charge of "back-dating" the transfer of interest in the company from Defendant to Ms. Bigelow. She testified that Defendant continued to direct the operations of the company after Defendant's bankruptcy filing, and Defendant stated at the Hearing that he still considered himself an owner of WFI Bamboo. A reasonable jury could conclude that there was never any transfer of ownership in the company and that Defendant's response to Schedule B—Personal Property was a fraudulent representation. Furthermore, a reasonable jury could have found that the fraudulent representation was material. It heard Defendant's testimony at the Hearing that he worked 65 hours a week for WFI Bamboo and that he considered himself an owner of it, regardless of what "a piece of paper" purported to show. A reasonable jury could find that Defendant's failure to state his ownership interest in a business entity that required his full-time attention qualifies as material for purposes of 18 U.S.C. § 152(3), because a debtor's assets are at the core of "materiality." *See Yagow*, 953 F.2d at 433 (noting that matters related to "nature and extent of assets" are center of broader definition of "material" under § 152(3)).

16

As to the knowledge and intent elements, a reasonable jury could have found the evidence supported both. Defendant's testimony from the Hearing revealed that he considered himself the owner of WFI Bamboo at the time of the bankruptcy filing even though he did not state his ownership interest in the company. *Cf. United States v. Zehrbach*, 47 F.3d 1252, 1261 (3d Cir. 1995) ("The statutory requirement that the underlying acts be performed 'knowingly' requires only that the act be voluntary and intentional and not that a person knows he is breaking the law."). Defendant voluntarily represented in Schedule B facts he did not believe to be true and complete. Ms. Bigelow's testimony that Defendant directed her to prepare sham transaction documents, as well as fraudulent tax returns, to obscure his ownership is compelling evidence that he intended to mislead the bankruptcy trustee, the bankruptcy court and his creditors. *See United States v. Sabbeth*, 262 F.3d 207, 217 (2d Cir. 2001) (holding that intent to deceive, rather than specific intent to defraud a third-party resulting in harm thereto, is sufficient to meet intent element); *United States v. Gellene*, 182 F.3d 578, 586-87 (7th Cir. 1999) (holding that show of intent to deceive sufficient; no showing of intent of defraud required). Such evidence is legally sufficient to support the intent element of a charge of bankruptcy fraud. *United States v. Ellis*, 50 F.3d 419, 426 (7th Cir. 1995) (holding that "circumstantial evidence is sufficient to prove the fraudulent intent required to secure a conviction under § 152"); *see also Pavlick v. Mifflin*, 90 F.3d 205, 209 n.4 (7th Cir. 1996) (citing *Ellis*).

### b.  *Third-Party Payments on Personal Debts*

A reasonable jury could have found that Defendant met the statutory elements on the third-party payments on personal debts theory as well. As to the material false statement, there is overwhelming evidence to suggest there were payments made on Defendant's loans beyond what he disclosed in Question 3 of the Statement of Financial Affairs. Three checks paid out to a creditor of Defendant's, each exceeding $600, and two of which Defendant signed, were offered into evidence. None of these payments was

17

disclosed. Defendant offered no evidence to controvert that the payments had been made. Therefore, a reasonable jury could have found that Defendant falsely omitted these payments from his bankruptcy petition, in violation of 18 U.S.C. § 152(3).

Defendant's contention that a reasonable jury could not have found the three payments, amounting to $5,900, material is without merit. Each of these payments is presumptively preferential, pursuant to 11 U.S.C. 547(b) (payments made to creditors within 90 days of a bankruptcy filing are presumptively voidable preferences); unless a defense applied, these payments were properly the property of the bankruptcy estate for distribution to Defendant's creditors. Preferential payments, as assets lawfully belonging to the estate, 11 U.S.C. § 541(a)(3) (property of the estate includes voidable transfers under § 547(b) recovered by the trustee under 11 U.S.C. § 550), falls squarely within the *Yagow* definition of "material." *Yagow*, 953 F.2d at 433.

Furthermore, the fact that Defendant signed two checks to satisfy personal debts on behalf of WFI Bamboo, a company in which he held an undisclosed ownership interest, would have alerted any competent bankruptcy trustee of potentially hidden assets or fraudulent transfers. Therefore, a reasonable jury could have found these omissions material.

As to the knowledge element, Defendant cannot seriously dispute that he did not know his answer to Question 3 was false because he made two of those payments with checks he signed himself on behalf of WFI Bamboo. A reasonable jury could have found the intent element satisfied also by the fact that Defendant admitted at the Hearing that he considered the debt payments made by WFI Bamboo income to him. A jury could reasonably conclude that Defendant's use of WFI Bamboo's funds to reduce personal debts to F&M Bank, followed by a failure to report those payments in Question 3, evidenced an intent to hide preferential payments from the bankruptcy trustee, the bankruptcy court and his other creditors. Indeed, any suggestion of a careless omission is strongly belied by the

18

fact that Defendant funneled these debt payments through WFI Bamboo rather than pay them personally from his own account. It is not at all difficult to infer that the omissions, following Defendant's oddly complex payments for a simple personal loan, were intended to defraud. *See Ellis*, 50 F.3d at 419 (circumstantial evidence sufficient for intent element).

Moreover, Defendant's reliance on the principle in *Rowe*, 144 F.3d at 21, that is, an answer to a question is not fraudulent if there is an objectively reasonable interpretation of the question under which the answer is not false, is not controlling here, nor would it apply if it were controlling. The plain language of Question 3 of the Statement of Financial Affairs asks the debtor to list "*all* payments on loans . . . aggregating to more than $600 to *any* creditor, made within 90 days immediately preceding the commencement of the case." (Emphasis added). "All" payments means all payments, regardless of whatever entity might be interposed to make the payment on behalf of the debtor. It is not objectively reasonable to read into Question 3 a restriction that such payments be made by the debtor alone and not through a third-party. Perhaps Defendant might gain some traction from this argument if the question included "by the debtor personally" or "excluding those made through a third-party on the debtor's behalf" to modify "all payments." However, the question's plain meaning is inescapable. Therefore, even if *Rowe* controlled the court's inquiry, its defense to a false statement charge would not apply.

### c.    *Income*

A reasonable jury could have found that Defendant fraudulently reported his income in Question 1 of the Statement of Financial Affairs. First, there is more than sufficient evidence to conclude that Defendant made a material misrepresentation when he reported no income for the year 1999 and the prepetition months of 2000. The government presented WFI Bamboo checks, some signed by Defendant, used to reduce Defendant's

19

personal debts. Defendant conceded at the Hearing that WFI Bamboo's payments of his personal debts amounted to personal income. Indeed, Defendant provided documentation, with personal annotations, to AUST Reasoner, which underscored that Defendant considered the debt payments income and not personal loans from WFI Bamboo. The personal annotations revealed further that Defendant received at least $425 per week from WFI Bamboo instead of nothing and that even this amount under-reported the extent to which Defendant, as the one who "started" WFI Bamboo, enjoyed income from the company.

That these omissions were material can hardly be disputed. The extent to which WFI Bamboo was covering Defendant's debts and providing him a stream of income would have encouraged a bankruptcy trustee to investigate the relationship Defendant had with the company in greater detail. These omissions also lent false support to Defendant's claim that he had no ownership interest in WFI Bamboo; his statement that he received no income from WFI Bamboo after 1998 supported his claim that he divested himself of any ownership in the company in November of that year. *Yagow*, 953 F.2d at 433 (holding that matters relating to debtor's financial transactions, not merely estate assets, qualify as material for purposes of bankruptcy fraud). By representing otherwise, Defendant was able to obscure further potential estate assets and thus returns to his creditors. In other words, the omissions affected the integrity of the bankruptcy process and were thus material under § 152(3). *See United States v. Novak*, 217 F.3d 566, 575 (8th Cir. 2000) ("[Section] 152 is a broad and inclusive provision, attempting to cover all of the possible methods by which a debtor may attempt to defeat the intent and effect of the bankruptcy law through any type of effort to keep assets from being equitably distributed among creditors." (Citations omitted) (internal quotations omitted)).

A reasonable jury could also have found these omissions were intentionally made with the knowledge that they were false. Defendant's personal annotation of "Ha! Ha!" in

the documentation to AUST Reasoner with regard to his under-reported income is essentially dispositive of the issue of whether Defendant knowingly made the misrepresentation. Moreover, he signed several of the checks that reduced his personal debts, that is, he signed a bankruptcy petition that was inconsistent with payments made by checks he had signed. *See Zehrbach*, 47 F.3d at 1261. The intent element is similarly well-supported by the evidence. The omissions in Question 1 supported his claim that he did not own any interest in WFI Bamboo after 1998. The omissions would also suggest to the bankruptcy trustee that Defendant had little in the way of cash to meet any of his existing debts; Defendant could advocate for a discharge of his debts while maintaining his existing level of expenditures.

A reasonable jury, therefore, could have found Defendant guilty under of making a fraudulent statement under the income theory as well.

### d.    Advice of Counsel Defense

The court rejects Defendant's argument for acquittal on the grounds that Defendant was entitled to an instruction on the advice of counsel defense. The court in *United States v. Mutuc*, 349 F.3d 930, 936 (7th Cir. 2003), held that a reliance instruction was inappropriate because reliance on legal "advice cannot support a defense to perjury." Indeed, "a defendant is not immunized from criminal prosecution merely because he consulted an attorney in connection with a particular transaction." *United States v. Rice*, 449 F.3d 887, 896-97 (8th Cir. 2006). A defendant is only entitled to a jury instruction on the defense if he "(i) fully disclosed all material facts to his attorney before seeking advice; and (ii) actually relied on his counsel's advice in the good faith belief that his conduct was legal." *Id*. at 897. The Eighth Circuit Court of Appeals has upheld an exclusion of the "good faith reliance on counsel" instruction in the fraud context. *United States v. Washburn*, 444 F.3d 1007, 1013 (8th Cir. 2006) (wire fraud related to dice game marketed to casinos). The *Washburn* court underscored that the duty to instruct a jury on

21

a particular defense only triggers upon a showing of an adequate factual basis for it. *Id.*

Mr. Mollman testified that he never advised Defendant that Defendant did not have to list income received in the form of debt payments. In fact, Defendant made no positive showing, that is, he offered no witness or documentation to suggest that Mr. Mollman ever had given him such advice, nor did Defendant testify that he relied on such advice when submitting his bankruptcy petition. Thus, there is no evidence in the record to warrant Defendant's requested jury instruction. *Cf. United States v. Barney*, 674 F.2d 729, 731-32 (8th Cir. 1982) (concluding advice of counsel instruction not warranted where there was "no evidence [defendant] attempted in good faith to seek competent legal advice from any attorney"). Furthermore, Defendant's remedy is not acquittal in any case, but a new trial. *See, e.g., United States v. Parker*, 267 F.3d 839, 843-44 (8th Cir. 2001) (declining to grant new trial where no factual basis existed for it). Accordingly, the advice of counsel instruction was correctly omitted from the final instructions and an acquittal is not warranted.

### e.    *Double Jeopardy*

Defendant previously made an identical argument regarding the materiality issue in his prior appeal before the Eighth Circuit Court of Appeals. *Mitchell*, 476 F.3d 544-45. In dismissing Defendant's argument, it reasoned that one could not ascertain the intent of the jury from the verdict form.

> The response to the interrogatory does not suggest that the jury made a unanimous factual finding with respect to the materiality of the misstatements. The finding means one of two things: either (1) the jury unanimously found the statements immaterial, or (2) some jurors found the statements material and some jurors found the statements immaterial. In the former case, jeopardy would attach, and in the latter case jeopardy would not attach. The language of the interrogatory itself is not susceptible to discerning just what, specifically, the jury found; we know merely that it was unable to unanimously agree beyond a reasonable doubt that the statements were

22

material.  There is nothing in the language that suggests the
jury has found beyond a reasonable doubt that the statements
were immaterial.

*Id*. at 545.

The same reasoning is dispositive of Defendant's claim regarding the ownership of
WFI Bamboo.  The jury's failure to check the box regarding such ownership means either
a) the jury unanimously found that Defendant did not fail to disclose his ownership interest
in WFI Bamboo or b) some jurors found that Defendant failed to disclose his ownership
interest in WFI Bamboo and some jurors did not.  There is nothing in the language of the
interrogatory to evidence that the jury unanimously found beyond a reasonable doubt that
Defendant did not fail to disclose such ownership interest.

The ambiguity as to these two matters from the First Trial does not trigger the
Double Jeopardy Clause because the jury did not "make[] a factual finding beyond a
reasonable doubt that would be fatal to the government's case."  *Id*. at 544.  Because these
issues "of ultimate fact [have]" not "been determined by a valid and final judgment,"
*Ashe*, 397 U.S. at 443, double jeopardy has not attached.  Defendant is subject to
continuing jeopardy as long as "criminal proceedings against [him] have not run their full
course."  *Price*, 398 U.S. at 326.

Therefore, Defendant's motion for acquittal on double jeopardy grounds is denied.

**B.  *Motion for New Trial***

**1.  *Defendant's Arguments***

Defendant submits that the "interests of justice" demand a new trial because
Defendant was ostensibly acquitted of this specification under Count 2 in the First Trial.
In essence, Defendant advances the same argument that he posits in his motion for
acquittal, but asks instead that the court, "in the interests of justice," Fed. R. Crim. Proc.
33, remedy the matter with a new trial.

As to the advice of counsel defense matter, Defendant's position is again familiar.

23

As in his motion for acquittal, he argues that the failure to instruct the jury as to a good faith reliance on counsel defense was error, requiring a new trial.

### 2. *Legal Analysis*

#### a. *Ownership of WFI Bamboo*

As explained above, the jury in the First Trial did not make a determination as to the ultimate fact of Defendant's false statement regarding his ownership of WFI Bamboo. Indeed, it hardly amounts to a "'a serious miscarriage of justice,'" *Huerta-Orozco*, 272 F.3d at 565 (8th Cir. 2001), for the court to follow the holdings made by the Eighth Circuit Court of Appeals, *Mitchell*, 476 F.3d at 546, in Defendant's case.

Therefore, Defendant's motion for a new trial on this basis is misplaced.

#### b. *Advice of Counsel*

The holding in *Parker* is dispositive. *Parker*, 267 F.3d at 843-44 (declining to grant new trial where no factual basis existed for it). There is no factual basis for the claim either that i) Defendant made full disclosure of all relevant facts to Mr. Mollman or ii) Defendant relied on advice given after such disclosure in making his bankruptcy filing. *See Rice*, 449 F.3d at 897. Therefore, Defendant's motion for a new trial on this basis is without merit.

## VI. CONCLUSION

**IT IS SO ORDERED:**

The court **DENIES** Defendant Daniel P. Mitchell's Motion for Acquittal, Arrest of Judgment and New Trial (docket no. 174).

**DATED** this 9th day of August, 2007.

LINDA R. READE
CHIEF JUDGE, U.S. DISTRICT COURT
NORTHERN DISTRICT OF IOWA