**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF IOWA**
**CEDAR RAPIDS DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff, | No. 05-CR-50-LRR |
| vs. | **SECOND SENTENCING MEMORANDUM** |
| DANIEL P. MITCHELL, | |
| Defendant. | |

*TABLE OF CONTENTS*

I.    *INTRODUCTION* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *2*

II.   *RELEVANT PROCEDURAL BACKGROUND* . . . . . . . . . . . . . . . . . . . . . . *2*

III.  *THREE-STEP PROCESS* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *4*

IV.   *ADVISORY SENTENCING GUIDELINES ISSUES* . . . . . . . . . . . . . . . . . *5*

V.    *BASE OFFENSE LEVEL* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *6*

VI.   *AMOUNT OF LOSS* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *11*
    *A.*  *Law*  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *11*
    *B.*  *Arguments* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *13*
    *C.*  *Analysis* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *13*
    *D.*  *Disposition* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *14*

VII.  *MULTIPLE VICTIMS* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *14*
    *A.*  *Law*  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *14*
    *B.*  *Arguments* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *15*
    *C.*  *Analysis* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *15*
    *D.*  *Disposition* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *16*

VIII. *VIOLATION OF A JUDICIAL PROCESS* . . . . . . . . . . . . . . . . . . . . . . . *16*

IX.   *CONCLUSION* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *17*

## I. INTRODUCTION

The matter before the court is the second sentencing of Defendant Daniel P. Mitchell.

## II. RELEVANT PROCEDURAL BACKGROUND

On May 19, 2005, Defendant was charged in a two-count Indictment. Only Count 2 of the Indictment is relevant here.[1] Count 2 charged Defendant with making a material false declaration, certificate, verification and statement, under penalty of perjury as permitted under 28 U.S.C. § 1746, in and in relation to his voluntary bankruptcy petition, in violation of 18 U.S.C. § 152(3).[2]

On May 2, 2007, a unanimous federal jury found Defendant guilty of the crime charged in Count 2. In three verdict forms, the jury found that Defendant submitted his bankruptcy petition under penalty of perjury and knowingly and fraudulently failed to disclose: (1) his ownership interest in Wood Floor Import Distributor, L.C., d/b/a WFI Bamboo ("WFI Bamboo"); (2) his total income from January 1, 1999, through about July 11, 2000; and (3) debt payments that WFI Bamboo made on his behalf within ninety days

---

[1] The complex procedural history of this case is set forth in prior orders, *see, e.g.*, Order on Defendant's Motion for Acquittal, Arrest of Judgment and New Trial (docket no. 188), at 2-4, and the court will not repeat it here.

[2] 
> **§ 152. Concealment of assets; false oaths and claims; bribery**
> A person who—
>> **(3)** knowingly and fraudulently makes a false declaration, certificate, verification, or statement under penalty of perjury as permitted under section 1746 of title 28, in or in relation to any case under title 11;
>
> shall be fined under this title, imprisoned not more than 5 years, or both.

18 U.S.C. § 152(3) (emphasis in original).

of the filing of his petition.

On June 25, 2007, the United States Probation Office ("USPO") prepared a Presentence Investigation Report ("PSIR"). On July 27, 2007, the USPO revised the PSIR. On August 20 and 22, 2007, the government and Defendant filed their respective sentencing memoranda.[3]

On August 30, 2007, sentencing commenced at a hearing ("Hearing") before the undersigned. Assistant United States Attorney Ian Thornhill represented the government. Defendant was personally present and represented by Attorneys Stanley Roush and Peter Riley. At the Hearing, the court pronounced sentence in a manner consistent with the

---

[3] Pursuant to the court's Order Setting Sentencing Hearing ("Order") (docket no. 189), the parties' sentencing memoranda were due on August 16, 2007. Among other things, the attorneys for each party were required to file "[a] separate brief that contains citation to all statutes, case law and guideline sections relied on in support of [its] position." Order at 3. The government asked for and received a four-day extension. Defendant's attorneys ignored the Order and failed to file a timely sentencing memorandum.

On August 21, 2007, the court ordered Defendant's attorneys to comply with the Order within twenty-four hours or face sanctions. On August 22, 2007, Defendant's attorneys filed a sentencing memorandum. The sentencing memorandum does not fully comply with the Order. For example, on the first-impression issue of the appropriate base-offense level, Defendant's attorneys do not cite any case law, but instead simply write: "This was charged as a bankruptcy fraud case under 18 U.S.C. Section 152 [sic]. The applicable guideline is 2F1.1." Def.'s Sent. Memo. (docket no. 196), at 1.

The court has expended extra effort and fully researched Defendant's arguments for his attorneys; indeed, after research the court holds that Defendant "wins" on the base-offense level issue. Although Defendant suffers no prejudice, Defendant's attorneys have done a great disservice to the judicial process. Once again, more judicial resources than necessary were expended on Defendant's claim than would have been expended had Defendant's attorneys fully briefed the issues. *See, e.g., United States v. Mitchell*, 476 F.3d 539, 543-44 (8th Cir. 2007) (reversing Defendant's conviction on Count 1 because "income received prior to the filing of a bankruptcy petition is not included as part of the bankruptcy estate," an argument that Defendant's attorneys neither raised nor briefed in the district court).

instant Second Sentencing Memorandum.[4]

### *III. THREE-STEP PROCESS*

The Sentencing Guidelines are no longer mandatory. *United States v. Haack*, 403 F.3d 997, 1002 (8th Cir.) (discussing *United States v. Booker*, 543 U.S. 220 (2005)), *cert. denied*, 126 S. Ct. 276 (2005). They are advisory. *Id.* The Eighth Circuit Court of Appeals has explained that, in the post-*Booker* world, "there are essentially three steps to determining an appropriate sentence." *United States v. Sitting Bear*, 436 F.3d 929, 934 (8th Cir. 2006).

> First, the district court should determine the applicable Sentencing Guidelines range without consideration of any [Sentencing] Guidelines departure factors, because the [Sentencing] Guidelines remain an important sentencing factor. *See* 18 U.S.C. § 3553(a)(4). Second, the district court, where appropriate, should consider the departure provisions

---

[4] The instant Second Sentencing Memorandum is designed to provide a more detailed understanding of the court's reasoning on some of the advisory Sentencing Guidelines issues. It is not comprehensive and should be read in conjunction with the record the court made at the Hearing. The Supreme Court recently stated:

> The appropriateness of brevity or length, conciseness or detail, when to write, what to say, depends upon the circumstances. Sometimes a judicial opinion responds to every argument; sometimes it does not; sometimes a judge simply writes the word "granted" or "denied" on the face of a motion while relying upon context and the parties' prior arguments to make the reasons clear. The law leaves much, in this respect, to the judge's own professional judgment.

*Rita v. United States*, 127 S. Ct. 2456, 2468 (2007). What is important is that "[t]he sentencing judge . . . set forth enough to satisfy the appellate court that [she] has considered the parties' arguments and has a reasoned basis for exercising [her] own legal decisionmaking authority." *Id.* (citing *United States v. Taylor*, 487 U.S. 326, 336-37 (1988)). Less explanation is necessary where, as here, the court sentenced within the advisory Sentencing Guidelines range. *Id.*

4

> contained in Chapter 5, Part K and/or §4A1.3 of the [Sentencing] Guidelines, as those sentencing provisions have not been excised by *Booker*. The resulting range is the post-*Booker* advisory [Sentencing] Guidelines range. Third, the district court should consider the rest of the § 3553(a) factors in determining whether to impose the "Guidelines sentence" as determined in the prior steps or a "non-Guidelines sentence" driven by the other § 3553(a) considerations, and sentence the defendant accordingly. *Haack*, 403 F.3d at 1003; *see also United States v. Denton*, 434 F.3d 1104, 1114 (8th Cir. 2006) (reviewing the sentence imposed by the district court under the three-part *Haack* methodology).

*Id.* at 934-35. At the Hearing, the court adhered to this three-step process. The so-called presumption of reasonableness that attends to the advisory Sentencing Guidelines range in the Eighth Circuit Court of Appeals played no part in the court's analysis. *See Rita v. United States*, 127 S. Ct. 2456, 2465 (2007) ("[T]he presumption applies only on appellate review.").

## IV. ADVISORY SENTENCING GUIDELINES ISSUES

At the Hearing, the fighting issue was whether USSG §2F1.1 (1998) (Fraud and Deceit)[5] or USSG §2J1.3 (Perjury) should set Defendant's base offense level. After the court determined that USSG §2F1.1 applied, the court decided three additional issues: whether to impose (1) a three-level enhancement, pursuant to USSG §2F1.1(b)(1)(D), for causing a loss of more than $10,000 but less than $20,000; (2) a two-level enhancement, pursuant to USSG §2F1.1(b)(2)(B), for an offense that involved a scheme to defraud more than one victim; and (3) a two-level enhancement, pursuant to USSG §2F1.1(b)(4)(B), for

---

[5] The parties agreed that the 1998 edition of the Sentencing Guidelines manual applied. *See* PSIR at ¶ 37. Effective November 1, 2001, USSG §2F1.1 was deleted by consolidation with USSG §2B1.1.

5

an offense that involved a violation of a judicial process.[6]

At the Hearing, the court resolved these four issues. To the extent necessary, the court made factual findings under a preponderance-of-the-evidence standard. *See United States v. Bah*, 439 F.3d 423, 426 n.1 (8th Cir. 2006) ("[J]udicial fact-finding using a preponderance[-]of[-]the[-]evidence standard is permitted provided that the [Sentencing Guidelines] are applied in an advisory manner."). The government bore the burden of proof on all issues. *See United States v. Flores*, 362 F.3d 1030, 1037 (8th Cir. 2001) (stating that the government bears the burden to prove sentencing enhancements); *see, e.g., United States v. Holthaus*, 486 F.3d 451, 454 (8th Cir. 2007) (stating that the government bears the burden to prove loss by a preponderance of the evidence).

## V. BASE OFFENSE LEVEL

The advisory Sentencing Guidelines instruct the court to "[d]etermine the offense guideline section in Chapter Two (Offense Conduct) most applicable to the offense of conviction (i.e., the offense conduct charged in the count of the indictment or information of which the defendant was convicted)." USSG §1B1.2(a). "The Statutory Index (Appendix A) provides a listing to assist in this determination." *Id*. cmt. (n.1).

The Statutory Index lists three offense guideline sections for convictions under 18 U.S.C. § 152: USSG §2B4.1 (Bribery), USSG §2F1.1 (Fraud) and USSG §2J1.3 (Perjury). USSG App. A. The Statutory Index lists multiple offense guideline sections, because 18 U.S.C. § 152 proscribes a variety of conduct. *See* 18 U.S.C. § 152(1)-(9). Section 2B4.1(a) sets the defendant's base offense level at **8**, §2F1.1(a) sets the defendant's base offense level at **6** and §2J1.3(a) sets the defendant's base offense level at **12**.

"When a particular statute proscribes a variety of conduct that might constitute the

---

[6] Because the court found that USSG §2J1.3 did not apply, it did not decide whether a three-level enhancement was warranted for "substantial interference with the administration of justice," pursuant to USSG §2J1.3(b)(2).

6

subject of different offense guidelines, the court will determine which guideline section applies based upon the nature of the offense conduct charged in the count of which the defendant was convicted." USSG §1B1.2, cmt. (n.1); *United States v. Jennings*, 487 F.3d 564, 586 (8th Cir. 2007) (same). That is, "[i]f more than one guideline section is referenced for the particular statute, [the court should use] the guideline most appropriate for the offense conduct charged in the count of which the defendant was convicted." USSG App. A, intro. When choosing amongst multiple guideline sections, the court "selects the guideline solely by 'conduct charged in the count of the indictment or information of which the defendant was convicted.'" *United States v. Street*, 66 F.3d 969, 979 (8th Cir. 1995) (quoting USSG §1B1.2(a)).

Neither party argued that USSG §2B4.1 was the most appropriate guideline. Indeed, the Indictment makes no mention whatsoever of bribery, and there is nothing in the record indicating that Defendant bribed anyone. Accordingly, the court limited its discussion to a choice between the remaining two guideline sections, USSG §2J1.3 and USSG §2F1.1. In other words, "the issue before the . . . court was whether [Defendant's] offense conduct was more akin to perjury or fraud." *United States v. Kaster*, No. 97-3210, 1998 WL 78995, *2 (7th Cir. Feb. 19, 1998). The government argued that Defendant's offense conduct was more akin to perjury; Defendant argued that his offense conduct was more akin to fraud.

The are no Eighth Circuit Court of Appeals cases that provide guidance as to how to decide whether a defendant's conviction for 18 U.S.C. § 152(3) is more akin to perjury or fraud. However, three unpublished cases from other jurisdictions are instructive.

In *United States v. Turner*, No. 98-3221, 1999 WL 357500 (10th Cir. June 3, 1999), the Tenth Circuit Court of Appeals affirmed the district court's decision to apply USSG §2F1.1 to the defendant's conviction under 18 U.S.C. § 152(3). As a threshold matter, the Tenth Circuit Court of Appeals rejected the argument that all defendants

7

convicted under 18 U.S.C. § 152(3) must be sentenced under USSG §2J1.3, because 18 U.S.C. § 152(3) expressly proscribes the making of false declarations under penalty of perjury. The Tenth Circuit Court of Appeals held that "[t]he [Sentencing] Guidelines . . . do not automatically mandate such a formalistic application" and noted that "courts have repeatedly applied §2F1.1 to false statements made in violation of 18 U.S.C. § 152(3)." *Turner*, 1999 WL 257500, at *1 (citing in part *United States v. Graham*, 60 F.3d 463, 465-67 (8th Cir. 1995)). The Tenth Circuit Court of Appeals affirmed the district court's application of USSG §2F1.1, because the district court found that the Defendant's false statement "was made for purposes relating to fraudulent activity, that is attempting to conceal that she had run up a number of debts that she was unauthorized to run up and for attempting to avoid having to account for and pay for those particular debts either to the creditors or to [a person whose identity Defendant stole]." *Id.* at *2 (citation and internal quotation marks omitted).

In *United States v. Kaster*, 1998 WL 78995 (7th Cir. Feb. 19, 1998), the Seventh Circuit Court of Appeals affirmed the district court's decision to apply §2J1.3 to the defendant's conviction under 18 U.S.C. § 152(3). However, the Seventh Circuit Court of Appeals recognized that §2J1.3 would not apply in most cases. The Seventh Circuit Court of Appeals reasoned:

> Kaster relies primarily on the fact that there are no reported cases in which a district court used § 2J1.3 to sentence someone who has violated 18 U.S.C. § 152. That no similar cases are reported does not seem unusual. Fraud is defined as an intentional perversion of the truth for the purpose of inducing another in reliance upon it to part with some valuable thing belonging to him or to surrender a legal right. It is reasonable to assume that the majority of bankruptcy petitioners who do not disclose their assets simply want to maintain their interest in those assets at the expense of their creditors. Thus, they lie for the purpose of inducing creditors to part with some valuable thing (money) or to surrender a

8

> legal right (the legal right to some part of the bankrupt's assets), rather than for [some other reason].

*Kaster*, 1998 WL 78995, *3 (alterations, citations, footnotes and internal quotation marks omitted). The Seventh Circuit Court of Appeals held that the case before it was the exception to the general rule, however, because it was undisputed that the defendant's motive in submitting the false declaration under penalty of perjury was "not pecuniary gain." *Id.*

In *United States v. Lewis*, 161 F.App'x 322 (4th Cir. 2006), the Fourth Circuit Court of Appeals also affirmed the district court's decision to apply §2J1.3 to the defendant's conviction under 18 U.S.C. § 152(3). Unlike the appellate courts in *Turner* and *Kaster*, the Fourth Circuit Court of Appeals focused exclusively on the language of the indictment before it.[7] The Fourth Circuit Court of Appeals reasoned:

> The indictment did not characterize the false declaration Lewis made as part of a scheme aimed at a specific creditor. Indeed, the indictment did not even mention the lender by name. Rather, the indictment concentrated on the gravity of Lewis's misrepresentation to the bankruptcy court. The indictment stressed, for example, the fact that all of the documents a debtor must file with a bankruptcy petition "are attested to under penalty of perjury." The gravamen of the indictment was that Lewis's false declaration interfered with the bankruptcy court's administration of justice.
>
> Thus, our conclusion is the same as that reached by the district court: a comparison of the charged misconduct as described on the face of the indictment with the guidelines shows that Lewis was indicted for activity that is more similar to perjury than to fraud. Sentencing him by applying the fraud guideline was therefore proper.

---

[7] Different standards of review were also employed. *Compare Kaster*, 1998 WL 78995, at *2 (reviewing for clear error), *with Lewis*, 161 F.App'x at 323 (reviewing de novo).

*Lewis*, 161 Fed. Appx. at 324 (citation omitted).

At the Hearing, the court concluded that Defendant's offense conduct was more akin to fraud than perjury and, therefore, §2F1.1 applied. This case is more like *Turner* than *Kaster* or *Lewis*. As in *Turner*, the trial evidence left no doubt that Defendant made his false declarations for purposes relating to fraudulent activity. He submitted his false declarations in a brazen attempt to hide his ownership interest in WFI Bamboo and income and debt payments derived therefrom from creditors and the bankruptcy trustee. Unlike *Kaster*, there are no other explanations for Defendant's conduct. And unlike *Lewis*, it cannot be said that "the gravamen" of the Indictment was that Defendant's false declarations interfered with the administration of justice. Rather, the Indictment stressed the fraudulent nature of Defendant's activities. Count 2 stated:

> On or about July 11, 2000, in the Northern District of Iowa, the defendant, DANIEL P. MITCHELL, *did knowingly and fraudulently submit a material false declaration, certificate, verification and statement*, under penalty of perjury as permitted by 28 U.S.C. § 1746, in and in relation to his voluntary petition for bankruptcy in case number 00-01724, in the United States Bankruptcy Court for the Northern District of Iowa. Specifically, defendant submitted signed written documents, under penalty of perjury, *in which he knowingly and fraudulently concealed and failed to disclose certain of his assets, income, and debt payments that were material to his voluntary bankruptcy petition.*

This in violation of Title 18[,] United States Code[,] § 152(3).

Indictment (docket no. 1), at 2 (italics added).[8]

---

[8] The court did not decide whether its analysis must be limited to the face of the Indictment or whether it may examine the trial evidence; in either event, the result was the same.

10

Accordingly, the court held that USSG §2F1.1(a) set Defendant's base offense level at **6**.

## *VI. AMOUNT OF LOSS*

The second issue before the court was whether the court should impose a three-level increase pursuant to USSG §2F1.1(b)(1)(D) for an amount of loss of more than $10,000 but less than $20,000.

### *A. Law*

In pertinent part, USSG §2F1.1(b)(1) provides:

> **§2F1.1. <u>Fraud and Deceit; Forgery; Offenses Involving Altered or Counterfeit Instruments Other than Counterfeit Bearer Obligations of the United States</u>**
> \* \* \* \*
> (b) Specific Offense Characteristics
>    (1) If the loss exceeded $2,000, increase the offense level as follows:
>
> | <u>Loss</u> (Apply the Greatest) | <u>Increase in Level</u> |
> |---|---|
> | (A) $2,000 or less | no increase |
> | (B) More than $2,000 | add **1** |
> | (C) More than $5,000 | add **2** |
> | (D) More than $10,000 | add **3** |
> | (E) More than $20,000 | add **4** |
>
> \* \* \* \*

USSG §2F1.1(b)(1) (emphasis in original). The Commentary to §2F1.1 provides guidance on calculating the amount of the loss. It states:

> Valuation of loss is discussed in the Commentary to §2B1.1 (Larceny, Embezzlement, and Other Forms of Theft). As in theft cases, loss is the value of the money, property, or services unlawfully taken; it does not, for example, include interest the victim could have earned on such funds had the offense not occurred. Consistent with the provisions of §2X1.1 (Attempt, Solicitation, or Conspiracy), if an intended loss that the defendant was attempting to inflict can be determined, this figure will be used if it is greater than the actual loss. . . .

11

*Id.* cmt. (n.8). The amount of the loss, however, need not be determined with precision. *Id.* cmt. (n.9); *see, e.g., United States v. French*, 46 F.3d 710, 715 (8th Cir. 1995) (interpreting §2B1.1). "The court need only make a reasonable estimate of the loss, given the available information." USSG §2F1.1, cmt. (n.9). "The offender's gain from committing the fraud is an alternative estimate that ordinarily will underestimate the loss." *Id.* In interpreting §2B1.1 and its Commentary, the Eighth Circuit Court of Appeals recently summarized the law of calculating "loss" as follows:

> "Loss" means the greater of either "actual loss" or "intended loss." U.S.S.G. § 2B1.1, cmt. n. 2(A). . . . . The intended loss is the pecuniary harm [the defendant] "intended to result from [his] offense," and it includes "harm that would have been impossible or unlikely to occur." U.S.S.G. § 2B1.1 cmt. n. 2(A)(ii). The district "court need only make a reasonable estimate of the loss . . . based on available information." U.S.S.G. § 2B1.1 cmt. n. 2(C).
> 
> \* \* \* \*
> 
> When determining intended loss, we look to the amount of loss a defendant actually intended to cause his creditors. *See United States v. Wells*, 127 F.3d 739, 747 (8th Cir. 1997) (acknowledging actual intent controls, and when "a court determines either that the defendant intended to succeed to the full extent of the fraud, or that there was no evidence that the defendant intended to cause less than the greatest possible loss . . . in those circumstances, the intended loss can properly be measured by the possible loss"); *see also Staples*, 410 F.3d at 490. There is no blanket rule defining intended loss as the lesser of the value of assets concealed or the value of the debtor's liabilities. Indeed, some factual scenarios may require an intended loss calculation based on the greater of the value of the assets concealed or debt sought to be discharged. *See United States v. Shevi*, 345 F.3d 675, 679 (8th Cir. 2003) (noting "if the debtor's concealed assets plus his disclosed assets totaled more than his debts, then asset concealment was essential to establishing insolvency, and the debtor was not entitled to bankruptcy protection at all"). Even if the value of the assets concealed is less than the discharge amount, when a

12

> defendant's fraudulent concealment creates an illusory eligibility for bankruptcy, intended loss extends to the entire discharge amount because he intends his crime to effectuate the improper discharge of all the reported debt.

*Holthaus*, 486 F.3d at 454-55.

### B. Arguments

The government argued that a three-level increase was appropriate, because the trial evidence shows that Defendant fraudulently concealed $8,980.83 in F&M Bank ("F&M") loan payments and $5,200.00 in F-150 truck loan payments. *See* PSIR ¶¶ 20, 23, 32. Defendant disagreed and marshaled forth a number of arguments in an apparent effort to prove that, even if the jury correctly found that he fraudulently concealed the debt payments on the F&M loan and the F-150 truck loan, there was no actual loss to his creditors. For example, Defendant variously pointed out that (1) the F-150 truck and the F&M loan were listed in his bankruptcy petition (2) the F-150 truck was "a secured asset," (3) "the debt [on the F-150 truck was] reaffirmed," "exempt" and "not recoverable by the trustee via the trustee's power to set aside a preferential transfer." Def.'s Sent. Memo. (docket no. 196-1), at 2. However, Defendant cited no legal authority whatsoever in support of his arguments.

### C. Analysis

The court found that Defendant caused an actual loss of $14,180.83 (i.e., the total of the payments on the F&M loan and the F-150 truck loan he hid) to his creditors and the bankruptcy trustee. Defendant also intended a loss of $14,180.83. Defendant failed to disclose the F&M loan payments and the F-150 truck loan payments in his bankruptcy petition with the intent to avoid his creditors and cause them to lose $14,180.83. Defendant's unsupported arguments, which tended to show that loss was, in fact, impossible, were based on an erroneous understanding of the law. Actual loss is not the only rubric for determining loss under USSG §2F1.1; intended loss is sufficient. *See,*

13

*e.g., United States v. Dolan*, 120 F.3d 856, 870 (8th Cir. 1997) (citations omitted) ("[T]o determine the amount of loss caused by a defendant's bankruptcy fraud, the district court should use the probable or intended loss the defendant meant to inflict, if that amount can be determined and if it larger than the amount of the actual loss."). To determine the intended loss, the court may consider "the value of the assets concealed." *Id.* The court is "not bound to accept [a defendant's] self-serving assertions at sentencing that he intended no loss to his creditors." *Id.* at 871. To the extent Defendant contends that he did not intend any loss to his creditors, these arguments are self-serving and the court does not believe him. *See, e.g.*, *Holthaus*, 486 F.3d at 455 (affirming district court's decision to reject self-serving arguments).

### *D. Disposition*

Accordingly, the court found that Defendant caused a "loss" of $14,180.83 (i.e., the total of the payments on the F&M loan and the F-150 truck loan that he failed to disclose in his bankruptcy petition). This merited a three-level enhancement, as it was a loss exceeding $10,000. *See* USSG §2F1.1(b)(1)(D) (stating that a loss "more than $10,000" but less than $20,000 results in a three-level increase). That brought Defendant's adjusted offense level to **9**.

## *VII. MULTIPLE VICTIMS*

The third issue the court decided was whether to impose a two-level enhancement pursuant to USSG §2F1.1(b)(2)(B) for an offense that involved a scheme to defraud more than one victim.

### *A. Law*

In pertinent part, USSG §2F1.1(b)(2)(B) states that "[i]f the offense involved . . . a scheme to defraud more than one victim, increase by **2** levels." USSG §2F1.1(b)(2)(B) (emphasis in original). A "'[s]cheme to defraud more than one victim' . . . refers to a design or plan to obtain something of value from more than one person." *Id.* cmt. (n.4).

14

"'Victim' refers to a person or entity from which the funds are to come directly." *Id.*

"[T]he relevant commentary [to §2F1.1] makes clear that the primary victims of a bankruptcy fraud, for the most part, are the individual creditors." *United States v. Shadduck*, 112 F.3d 523, 531 (1st Cir. 1997). In addition, a bankruptcy trustee "may be victimized directly by a bankruptcy fraud to the extent it deprives the estate of assets otherwise subject to administration." *Id.*; *see, e.g., Holthaus*, 486 F.3d at 457-58 (holding that a bankruptcy trustee was entitled to restitution as a "victim" under 18 U.S.C. § 3663A(a)(2)).

### *B. Arguments*

The government contended that Defendant's numerous creditors and the bankruptcy trustee were the victims of his offense. Defendant claimed there was no scheme to defraud and there were no victims. He stated that he "had debt to taxing entities" and thus "the avoidance of debt payments would have caused the net amount recovered to be paid on the tax debts, thereby reducing the amount [he] continued to owe the taxing authorities upon completion of the [b]ankruptcy." Def.'s Sent. Memo. (docket no. 196), at 2-3. Alternatively, he stated that "if there was any victim it was only one, the Defendant himself." *Id.* at 3. Again, Defendant cited no legal authority whatsoever in support of his arguments.

### *C. Analysis*

The court found the instant offense involved a scheme to defraud multiple victims, including the bankruptcy trustee, three secured creditors, four creditors holding unsecured priority claims and fifty-nine creditors holding unsecured priority claims. Defendant's wholly unsupported arguments lack merit.

Defendant had a scheme to use the bankruptcy process fraudulently. He attempted to have his debts discharged, while keeping some assets which should have been turned over to his creditors to satisfy those debts. By fraudulently concealing his income,

Defendant tried to illegally keep property of the bankruptcy estate that would otherwise be subject to administration for the benefit of creditors. *Shadduck,* 112 F.3d at 531. In this sense, Defendant had a design or plan to obtain something of value from multiple persons. *See id.* at 531 n.13; *cf. United States v. Pizano*, 421 F.3d 707, 724-25 & 724 n.6 (8th Cir. 2005) (approving of defining "scheme to defraud" for purposes of 18 U.S.C. § 1344 (bank fraud) as "any plan or course of action intended to deceive or cheat another out of money or property by employing material falsehoods, concealing material facts, or omitting material facts"); *accord* Eighth Circuit Model Criminal Jury Instruction 6.18.1341 (2005) (using similar language).

### *D. Disposition*

Accordingly, the court found that the offense of conviction involves a scheme to defraud more than one victim. As such, a two-level enhancement was warranted under USSG §2F1.1(b)(2)(B). That brought Defendant's adjusted offense level to **11**.

### *VIII. VIOLATION OF A JUDICIAL PROCESS*

Third, the court decided whether to impose a two-level increase pursuant to USSG §2F1.1(b)(4)(B) for an offense that involved a violation of a judicial process. In pertinent part, USSG §2F1.1 provides:

> If the offense involved . . . [a] violation of any judicial or administrative order, injunction, decree, or process not addressed elsewhere in the guidelines, increase by **2** levels.

USSG §2F1.1(b)(4)(B) (emphasis in original). Defendant "reserve[d] the right to argue that this enhancement should not apply, however acknowledge[d] that current authority in the 8th Circuit [sic] supports its application." Def.'s Sent. Memo. (docket no. 196), at 3.

Section 2F1.1(b)(4)(B) applies to cases involving fraudulently concealing assets in a bankruptcy proceeding, because in concealing assets on his bankruptcy petition, a

16

defendant violates a "judicial . . . process." *United States v. Lloyd*, 947 F.2d 339, 340 (8th Cir. 1991); *see also United States v. Mohamed*, 161 F.3d 1132, 1136 (8th Cir. 1998) (recognizing that six circuit courts of appeals have held that "the act of concealing assets when filing a bankruptcy petition suffices to warrant a two-level enhancement") (citing *United States v. Guthrie*, 144 F.3d 1006, 1010 (6th Cir. 1998); *Saacks*, 131 F.3d at 545-46; *United States v. Messner*, 107 F.3d 1448, 1457 (10th Cir. 1997); *United States v. Welch*, 103 F.3d 906, 908 (9th Cir. 1996); *United States v. Michalek*, 54 F.3d 325, 332-33 (7th Cir. 1995) and *United States v. Bellew*, 35 F.3d 518, 520 (11th Cir. 1994)). *But see United States v. Thayer*, 201 F.3d 214, 226-30 (3d Cir. 1999) (reaching opposite conclusion). There is no "double counting" because the base offense level only takes into account the act of fraudulent concealment, not the additional fact that it occurred in a judicial proceeding. *United States v. Cheek*, 69 F.3d 231, 233 (8th Cir. 1995). Defendant's "abuse of the bankruptcy process makes him more culpable, and thus distinct from, others who have committed offenses under §2F1.1." *Id.*[9]

Accordingly, the court found that Defendant was subject to a two-level increase pursuant to USSG §2F1.1(b)(4)(B) for an offense that involved a violation of a judicial process. That brought Defendant's adjusted offense level to **13**.

## IX. CONCLUSION

Defendant's base offense level under the advisory Sentencing Guidelines was **6**.

---

[9] In November 2000, the United States Sentencing Commission resolved the circuit split in favor of the Eighth Circuit Court of Appeals' view. A specific provision was added granting a two-level enhancement if the offense involved "a misrepresentation or other fraudulent action during the course of the bankruptcy proceeding." USSG §2F1.1(b)(4)(B) (2005). Thus, regardless of whether the court views the guidelines, as interpreted in the Eighth Circuit Court of Appeals, before or after this change, Defendant is subject to a two-level increase.

USSG §2F1.1(b)(1)(a). The court found that Defendant is subject to a **three**-level increase pursuant to USSG §2F1.1(b)(1)(D) for intending a loss exceeding $10,000, a **two**-level increase pursuant to USSG 2F1.1(b)(2)(B) for an offense involving a scheme to defraud more than one victim and a **two**-level increase pursuant to USSG §2F1.1(b)(4)(B) for an offense that involved a violation of a judicial process. This resulted in an adjusted offense level of **13**. Because Defendant is Criminal History Category I and no other adjustments applied, the court found Defendant's advisory Sentencing Guidelines range was 12-18 months of imprisonment. *See* USSG App. A.

**IT IS SO ORDERED.**

**DATED** this 30th day of August, 2007.

_____
LINDA R. READE
CHIEF JUDGE, U.S. DISTRICT COURT
NORTHERN DISTRICT OF IOWA